*410
 
 Mr.'Justice DAVIS
 

 delivered the opinion of the court.
 

 If the contract of Jauuary 25th, 1868, was never surrendered or abandoned-it .is manifest that the defendants ac'quired an interest in and lien upon .the log's furnished by Blake to the extent of the advances made by them. There could'be, therefore, on the theory that the contract of'the 25th of January was subsisting, no ground for the maintenance of this action. It is said, .however, that the defendants lost their rights under this contract by what occurred and was done subsequently to its execution.
 

 It is undeniable that before the execution of the contract of May 25th the logs in controversy were in the possession .of the defendants, who had advanced on them to Blake a "very large sum of money. Without these advances the'logs cquld not have been cut, banked, and put in the river; and,unless the defendants have plainly lost their right to- retain the logs, common justice-requires that they should be repaid.' The honesty of the transaction is.undisputed. .Nor'is there, anything to show that the defendants were aware of the insolvent condition of Blake until after the logs had been delivered and the money advanced. They were proceeding in .'good faith to carry out their part of the contract when they were met by information of Blake’s inability, to go on with his business. The bill of sale, as it is called, which they took embraced not only the logs in controversy', but other personal property and real estate.
 

 It is fair to infer from the facts found in the case that the . bill of sale was not intended to clothe the defendants with any greater rights in the logs than they, possessed without it, for it is very clear that the parties acted on the idea that the lumber, when manufactured and sold, would fall short of reimbursing the defendants for their ¿dvances, interest,- and, expenses. To save them from anticipated loss Was, doubtless, the motive for including the remaining property of Bliike, and not any expectation that previously acquired legal lights wquld be enlarged. The giving this preference has'not operated to lessen the estate of Blake, as the creditors
 
 *411
 
 got everything but the logs, and these, as it turns out, Blake had no interest in.
 

 If there were any reasonable doubt about the intention of' the defendants not to abandon the contract of January 25th, it is set at rest' by the consideration that when the bill of sale was executed and delivered there was no agreement to c.ancel it, nor was it, in fact, cancelled, but ivas held and retained by the defendants. Naturally, if they had intended to rest their right to the logs exclusively on the bill of sale, they would have surrendered the former security. It is, therefore, not a case'where an old security is abandoned and given up, and a new one taken .as a substitute for that which previously existed. If, then, the contract of 25th January was not merged in the contract of 25th May,- the latter one cannot operate an extinguishment of the former, the fairness of which has not been denied. This would not he the case if both contracts were valid, unless by express agreement, and it would be singular if such an'effect could be produced, where one of them could be avoided by creditors as against the policy of the law. The creditors having elected to avoid the fraudulent conveyance, take the property as though it had never been made, and subject to all lawful liens upon it. The assignee, standing in the place of the bankrupt; acquired no greater rights than he possessed, and the defendants neither gained nor lost any rights because of the bill of sale.
 

 These general views are sustained by authorities which seem decisive of the point at issue.
 
 *
 

 One of these authorities,
 
 White
 
 v. Gainer,
 
 †
 
 was trover by the assignee of a bankrupt. The defendant, a maker of
 
 *412
 
 cloth, who had a lien on some cloth in his possession, purchased it of the bailor, together with several -other pieces, after he became bankrupt, and when the clotlr was demanded of him by the assignees of the bankrupt, refused to give it up, saying, “I may as well give up every transaction of my life.”
 

 It was contended at the trial that the lien was merged in the purchase, and that, at all events, it was waived, because . not set up when the cloth was demanded. The judge directed the jury that the demand should have been accompanied with a tender of the amount due for the workmanship on the cloths, but reserved the point as to the merger of the lien.
 

 On deciding the motion for a rule
 
 nisi
 
 to set aside the verdict, Best, C. J., said: “It has been urged that he (the defendant) bought the cloths after the bankruptcy. If that were so, he stands in the same situation as every other purchaser, under the same circumstances; the purchaser is liable to restore them to the assignees, but the assignees must take them subject to such rights as had accrued previously to tlieir claim, and the bankruptcy of the bailor will not deprive the defendant of the right to which he is entitled, — the right of lien. It might have been otherwise, if the defendant, when called on to surrender the goods, had relied on the purchase; but this was not the case, and the verdict must stand.”
 

 The rule laid down by Chief Justice Best is applicablhere.
 

 The assignee of Blake had no right to the property until he had tendered the advances upon it, and there is no evidence that the defendants placed their refusal to deliver the property upon any particular ground. In the absence of this evidence it is a reasonable presumption that .the lien, if not asserted in terms, at least, was not when demand was made, waived. It is trite the defendants claimed, after the execution of the bill of sale to the creditors of Blake and other persons, to be the absolute owners of the property conveyed to them, but so far as the logs were concerned,
 
 *413
 
 this claim was doubtless founded on the belief that the price of lumber would not advance, and if if did not, according to the estimates which were made, Blake had no interest in them. If so, although the claim of absolute ownership might not be legally correct, it had a basis of fact to rest upon, and does not prove that the defendants intended to abandon their lien. Indeed, it would be a harsh rule to infer the abandonment of a lien to the extent of this one, contracted in good faith in the prosecution of a legitimate business, unless the evidence on the subject left no other alternative.
 

 It is said that after the execution of the bill of sale the lumber was not sold on joint account, and, therefore, the lion was waived. The answer to this is that the contract by which the lien was secured did not require the lumber to be sold on joint account. If the defendants sent the lumber to market, sold it to best advantage, and divided the proceeds, the contract on their part was complied with. They had entire control over it, and the manner of sale is immaterial and cannot affect the rights of the parties.
 

 The leading purpose of the Bankrupt law is to secure an equal distribution of the bankrupt’s property among his creditors. This purpose was accomplished in this case when the bill of sale was set aside, but the assignee seeks to go further aud increase the estate more than seventy thousand dollars by relieving the bankrupt from the performance of a pre-existing valid contract. This he cannot do, unless’on the clearest proofs that the defendants intended to abandon this contract and rely wholly On the bill of sale. As these proofs are wanting, the judgment is
 

 Affirmed.
 

 *
 

 In re Kahley, 4 Bankrupt Register, 124; Ladd
 
 v.
 
 Wiggitt, 35 New Hampshire, 428; Towle
 
 v.
 
 Hoit, 14 Id. 63; Stedman v. Vickery et al., 42 Maine, 136; Hoyt
 
 v.
 
 Dimon, 5 Day, 483; Britt
 
 v,
 
 Aylett, 6 English, 475; Mead
 
 v.
 
 Combs, 4 C. E Green (Hew Jersey), 112; Ripley
 
 v.
 
 Severance, 6 Pickering, 474; Sawyer
 
 v.
 
 Turpin, 5 Bankrupt Register, 339; Eastman
 
 v.
 
 Porter, 14 Wisconsin, 39; Stokoe
 
 v.
 
 Cowan, 29 Beavan, 637; Meshke
 
 v.
 
 Van Doren, 16 Wisconsin, 319; White
 
 v.
 
 Gainer; 2 Bingham, 23.
 

 †
 

 2 Bingham; 23.