JAMES D. FOWLER & another *vs.* FENDLEY PARSONS & others.

Suffolk.    Nov. 16, 1886. — Jan. 10, 1887.    HOLMES & GARDNER, JJ., absent.

Replevin cannot be maintained for goods taken from the possession of the defendant, who has a lien upon them, unless the lien is discharged or waived before the action is brought; and a neglect to pay or tender the amount of the charges creating the lien is not excused on the ground that it would be useless because the defendant would have refused to surrender the goods.

If A. knows or believes that B., in good faith, claims goods as the consignee of a supposed owner other than A., and, believing himself to be the owner and intending to claim the goods, stands by and permits B. to pay customs duties upon the goods without disclosing his claim, and with the intention of replevying the goods after the duties are paid, B. acquires an equitable lien upon the goods, which he is entitled to have discharged before A. can obtain possession of them; and such lien is not waived or lost by the refusal of B. to surrender the goods without placing his refusal on the ground of lien.

REPLEVIN of forty-two hogsheads, two tierces, and one barrel of molasses, on board the schooner Mary Ellen, in the port of Boston, alleged to be unlawfully taken and detained by Fendley Parsons, the master of the schooner, William H. Law, the owner of the schooner, and Frederic N. Lambert, the alleged consignee of the molasses. Writ dated June 27, 1881. The answer was

as follows: "And now come the defendants in the above-entitled cause, and for answer to the plaintiffs' writ and declaration deny that they or any of them unlawfully and without justifiable cause took the goods of said plaintiffs, as alleged and described in the writ. And they further say, that all said goods were the property of and belonged to the defendants, and were not the property of the plaintiffs, and the defendants were and are entitled to the possession thereof."

Trial in the Superior Court, before *Pitman*, J., who allowed a bill of exceptions, in substance as follows:

The plaintiffs introduced evidence tending to show that the molasses replevied formed part of the cargo of two hundred and fifty-five hogsheads and twenty-three tierces shipped by Fowler and Company of Cienfuegos, Cuba, to the plaintiffs, as consignees under advances, on the brig Happy Return, of which one Creighton was master, at Cienfuegos, on April 25, 1881; that thereafter, on April 30, said brig with her cargo put into the island of Grand Cayman, in distress, in a leaking and unseaworthy condition, said island being about one hundred and eighty miles south of Cienfuegos; that afterwards, on May 11, said brig was condemned, and was sold by auction on May 24; that said cargo was landed there, and afterwards, on May 25 and 26, was sold by order of the master, by public auction; that at said sale the defendant Law, either directly or through agents, purchased out of said cargo the molasses replevied, and the same was by his agent, one Thompson, shipped on the schooner Mary Ellen to Boston, under invoice and consignment to the defendant Lambert.

The plaintiffs also introduced evidence tending to show that such sale of the cargo at Grand Cayman was unnecessary, without authority from the owners, and unjustifiable, and was made without communication with the owners or underwriters; and that means of communication existed.

The deposition of the defendant Law was taken by the defendants, and it was read to the jury by the plaintiffs, and the evidence introduced by the plaintiffs that the molasses replevied was consigned to the defendant Lambert was contained in this deposition, wherein Law also testified that he came to Boston on board the Mary Ellen at the same time she brought the molasses.

The defendants introduced evidence tending to show that such sale was necessary and justifiable, and that no means of communication with the owners and underwriters existed.

The defendant Lambert testified that the first he knew of this cargo of molasses was on June 27, 1881, when he found the captain of the Mary Ellen waiting for him at his office on Commercial Street in Boston; that he found that the vessel had arrived the night before, and the captain handed him the invoice of the molasses; that he then took some money and started for the custom-house to enter the molasses; that he did not then know where the molasses was purchased, that there was any salvage claim, or any of the facts in regard to its leaving Grand Cayman; that he and the captain went directly to the custom-house, and there he entered the vessel and the cargo; that they were detained at the custom-house between two and three hours in attending to this business, having to see several persons and go from office to office; that he then paid the duties on the molasses, in all $344.80, and took a receipt therefor; that he at the same time gave a bond to pay any additional duties that might be found due upon regauging the molasses; that the inspector afterwards found there were seven hundred and twenty-four gallons over, and that, on July 30 following, he accordingly paid to the government the further sum of $48.95 as duties, for which he took a receipt; that, although the goods at the time of this last payment had been replevied, he made the payment because he had signed the bond and was obliged to; that, while he was paying the duties on June 27, there was a person at the custom-house who made some inquiries about the cargo, but did not tell him what he wanted; that he saw him two or three times at the custom-house, and he was looking at the witness; that he followed the witness to two or three places, but he could not swear that he was in the cashier's room when the duties were paid; that the witness got a landing permit, which he gave to the captain, and then went back to his office, and then one Magoun and two other persons, one of them the same person he saw at the custom-house, came in and demanded the cargo; that they represented the American Lloyds; that they replevied the molasses at that time; that they made no tender of the duties, and have never done so; that the cargo was still

on board the vessel; that it was replevied from the hold of the vessel; that no freight was paid by any one; and that the vessel belonged to the man who shipped the molasses, R. M. Thompson, and was in his name.

On cross-examination, the witness testified that there might have been other conversation between himself and the men who came to his office; that there was something said about an agreement as to bondsmen, but that he remembered nothing else; that he was acquainted with Magoun, and everything was pleasant between them; that he told them, if they replevied it, he should have to give it up. "Of course I refused to give up the molasses at first; they asked me before the replevin, and I said I would not give it up, and they replevied it. One of the parties was an officer."

Lambert also testified that he had known Law seven or eight years; and that he had transacted business with Law for one or two years, selling him goods for shipment to Grand Cayman, and receiving back cargoes from Law consigned to him, Lambert.

No other evidence was introduced by either party in regard to Lambert's acts or connection with the matter, or of the dealings or interviews of the plaintiffs with him. The counsel for the plaintiffs stated in argument, that the plaintiffs were willing to repay to Lambert the duties upon said molasses paid by him.

The defendants requested the judge to instruct the jury as follows: " If the defendant Lambert paid the customs duties due to the government upon the molasses replevied, upon its arrival, in ignorance of any claim of the plaintiffs to title or possession, and made this payment with the knowledge of the plaintiffs or their agents, and without objection from them, they cannot maintain this action without proof that the amount so paid has been tendered to him."

The judge declined to give the instruction requested, and instructed the jury as follows: "In this case, the plaintiffs make no question as to their equitable duty to repay to Lambert the amount of duties paid by him, and express their readiness to do so; and it may be taken for granted that, if he had claimed such repayment before replevin, it would have been their legal duty to have tendered such payment, but the law does not compel vain and formal tenders where the conduct of the party dispenses

with them; and, if the jury are satisfied that the defendant Lambert made no disclosure to the plaintiffs or their agent of the amount of said duties, and made no claim whatever to the repayment, and that, from his relation to the cargo, and the general and absolute refusal to surrender the same, a tender on the part of the plaintiffs would have been useless, the defendants cannot now set up the failure to make such tender as a bar to this suit. That is the law which I give you in relation to the last prayer of the defendants."

The judge instructed the jury upon all the other questions raised at the trial, and to his instructions thereon no exception was taken. The jury returned a verdict for the plaintiffs; and the defendants alleged exceptions.

*C. T. Russell, Jr.*, for the defendants.

*B. F. Hayes*, for the plaintiffs.

FIELD, J. If the goods replevied were taken from the possession of the defendant Lambert, and he had a lien upon them for money paid for customs duties, the action cannot be maintained, unless this lien was discharged or waived before the action was brought. The neglect to pay the amount of the duties, or to make a tender of the amount, is not excused because it would be useless in the sense that, if such a payment or tender had been made, the defendants would still have refused to surrender the goods. A tender of the amount cannot be said to be useless, although the defendants do not accept it, because the plaintiffs must have the right of immediate possession in order to maintain the action, and, if a lien is not waived, it must be discharged before the plaintiffs can have this right.

The next question is, whether the exceptions disclose any evidence for the jury that the defendants had a lien. If trover had been brought, the value of the goods at Grand Cayman would have been the measure of damages. But, in replevin, it has often been found impossible to prevent the plaintiff from obtaining the benefit of an increase in the value of the property caused by the defendant, although the defendant, in expending money upon the property, has acted in good faith.

If money has been expended, it cannot be recovered unless it has been expended at the express or implied request of the other party, and, except perhaps in the case of innkeepers, a lien upon

goods cannot be created without the express or implied assent of the owner. In the case at bar, the master and the owner of the schooner would not have had against the plaintiffs a lien upon the goods for freight, and, if they would not, the defendant Lambert could not acquire such a lien by paying the freight. *Robinson* v. *Baker*, 5 Cush. 137. *Stevens* v. *Boston & Worcester Railroad*, 8 Gray, 262. *Clark* v. *Lowell & Lawrence Railroad*, 9 Gray, 231. *Gilson* v. *Gwinn*, 107 Mass. 126. *Storms* v. *Smith*, 137 Mass. 201.

The United States have probably a lien against the owner for duties upon imported goods in their custody, although the importation has been made by, and on account of, a person who came wrongfully into the possession of the goods, and the duties must be paid, if the goods are entered for consumption and are withdrawn from the custody of the United States; but this lien is not transferred to the person who pays the duties and receives the goods. The general rule is, that no lien can be implied in favor of a person who acts adversely to the rights of the owner. Cases cited *supra*. *Lempriere* v. *Pasley*, 2 T. R. 485. *Allen* v. *Ogden*, 1 Wash. C. C. 174.

The defendant Lambert puts his claim, however, upon the ground that the plaintiffs, by their conduct, are estopped from denying that he had a lien, or from denying that the duties were paid for their use and at their request. The instructions given by the court are not merely that, if a tender would have been useless, the failure to make it would not prevent the plaintiffs from maintaining the action, but they involve also the question of a waiver of a tender by a general and absolute refusal to surrender the goods. The principles invoked on both sides are essentially those of equitable estoppel. Each party contends that the other neglected to speak when it was his duty to speak, whereby the other was intentionally misled into doing or omitting to do what otherwise he would not have done or omitted. These equitable principles are enforced in actions at law when they go to the whole action. *Mexal* v. *Dearborn*, 12 Gray, 336. *Thompson* v. *Rose*, 16 Conn. 71. *Everett* v. *Saltus*, 15 Wend. 474; *S. C.* 20 Wend. 267.

When the facts on which a lien rests are as well known to the plaintiff as to the defendant, and the defendant simply refuses

to give up the property without alleging any reason, we do not think that a lien, if one exists, is thereby waived. *Everett* v. *Coffin,* 6 Wend. 603. *White* v. *Gainer,* 2 Bing. 23. *Avery* v. *Hackley,* 20 Wall. 407, 412.

It may be that, if the lien is unknown to the plaintiff, and the defendant knows or has reason to know this, it is the defendant's duty, when a demand is made upon him for the property, to give the plaintiff notice of the lien, if he relies upon it; and it has been often held that, when the defendant puts his refusal to surrender property upon a ground which is inconsistent with a lien, he cannot defeat an action by setting up a lien of which the plaintiff was ignorant at the time he brought the action. Still, even in these cases, there may be a distinction between waiving the necessity of a tender as a condition precedent to the right of action, and losing the right to have a claim upon property satisfied in some manner. *Hudson* v. *Swan,* 83 N. Y. 552.

Under the pleadings, the burden was on the plaintiffs to prove property, general or special, in the goods replevied, and the right of immediate possession; but it may well be doubted whether the defendants, under their answer, can rely upon a lien, if they have one. The defendants deny that they unlawfully took the goods, but do not deny that they unlawfully detained them, except by alleging that the goods "were the property of and belonged to the defendants, and were not the property of the plaintiffs, and the defendants were and are entitled to the possession thereof." The fair construction of this answer is, that the defendants say they are entitled to the possession of the goods, because they say that the goods are their property. Such an allegation might perhaps be held to raise only the issues of property in the goods and of possession as dependent upon property. The refusal of the court to rule as requested, and the rulings given, however, do not appear to have been put upon the form of the pleadings, and, as the questions argued are of substantial importance, we are unwilling to decide the case upon this ground.

The exceptions state all the evidence introduced by either party "in regard to Lambert's acts or connection with the matter, or of the dealings or interviews of the plaintiffs with him;" and that "the counsel for the plaintiffs stated in argument

that the plaintiffs were willing to repay to Lambert the duties upon said molasses paid by him." If the plaintiffs or their agents knew or believed that Lambert, in good faith, claimed the goods as consignee of a supposed owner other than themselves, and they, believing themselves to be the owners, and intending to claim the goods, stood by and permitted him to pay the duties without disclosing their claim, and with the intention of replevying the goods after the duties were paid, we think that Lambert was equitably entitled to have the amount of the duties paid to him before the plaintiffs were entitled to possession, and that he thereby acquired an equitable lien upon the goods; and we also think that the evidence recited in the exceptions does not show that this lien has been waived or lost. *Willmott* v. *Barber*, 15 Ch. D. 96. *Ramsden* v. *Dyson*, L. R. 1 H. L. 129, 141, 168, 170. *Rennie* v. *Young*, 2 DeG. & J. 136. *Wendell* v. *Van Rensselaer*, 1 Johns. Ch. 344. *Niven* v. *Belknap*, 2 Johns. 573. *Pickard* v. *Sears*, 6 A. & E. 469. *Gregg* v. *Wells*, 10 A. & E. 90. *Dewey* v. *Field*, 4 Met. 381. *Hinchley* v. *Greany*, 118 Mass. 595. *Griffin* v. *Lawrence*, 135 Mass. 365.

If the defendant Lambert had this lien, it was the duty of the plaintiffs to discharge it by paying the amount of the duties before they replevied the goods. The effect of an offer to do this, if Lambert refused to state to them the amount, and they were thus prevented from tendering the exact amount due, need not be considered. If the instructions requested ought not to have been given without some modification such as has been suggested, yet the instructions given were erroneous, and there must be a new trial. We are not now required to determine whether, if on a new trial the defendant Lambert should obtain a verdict, and it should be established at the trial that his only right to retain the goods was as security for the payment of the amount of the duties, he would be entitled to a judgment for a return, if the plaintiff, after the verdict, paid this amount to him or into court for him. *Exceptions sustained.*