J. C. ENRIGHT AND C. H. FITCH *vs.* ROLLIN AMSDEN, assignee.

October Term, 1897.

Present:  Ross, C. J., ROWELL, TYLER and THOMPSON, JJ.

*Demurrer in Answer—Sufficiency of Affidavit to Chattel Mortgage—Lien of Mortgagee when not Abandoned by Purchase and Sale—Insolvency Law—Transfers in Fraud of that Law how Purged—Exception —Costs.*

The defendant, in his answer, demurred to the jurisdiction for that the orators have an adequate remedy at law.   But as the demurrer was not brought on for hearing before the merits were gone into it was waived; and as chancery has jurisdiction of the subject matter, namely, of enjoining actions at law, it will retain the case, and deal with it according to the practice of the court.

In appeals from chancery an objection not made below may be made here if it is one that could not have been obviated.

When the condition of a chattel mortgage states the liability specifically, and the oath is, that the mortgage was made for the purpose of securing the debt or liability specified in the condition thereof, and for no other purpose whatever, and that the same is a just debt or liability, honestly due and owing from the mortgagor to the mortgagee, the statute is substantially complied with.

A mortgagee of personal property does not abandon his lien by purchasing the goods under an arrangement with the mortgagor that he shall resell them and apply the proceeds to the discharge of the liability indemnified against by the mortgage.

Such a transaction amounts to a purchase of the equity of redemption and does not discharge the mortgage lien even though it be, as to the equity, in contravention of the insolvency law.

The resale under such an arrangement, for a fair price and before insolvency proceedings, does not discharge the lien, but is valid and effectual to pass the title as against the mortgagor's assignee in insolvency, for the mortgagor may lawfully consent to a sale, even before condition broken, for the purposes of the mortgage.

But although in such a case the mortgagee has a right to sell for the purposes of the mortgage, yet the transfer of the equity to him may be a fraud upon the insolvency law, and if so the assignee is entitled to the proceeds of the sale less the amount appropriated to the purposes of the mortgage, unless the fraud has been purged by matter *ex post facto.*

In the case at bar the fraud was purged to the extent of another debt of the mortgagor which the mortgagee, by direction of the mortgagor, paid from the proceeds of the sale, before insolvency proceedings, to a *bona-fide* creditor who was without notice of the fraud upon the insolvency law.

A report is not to be set aside nor recommitted for failure of the master to report, upon request, all the evidence upon which he makes a certain finding, when he specifically states the facts upon which that finding is based, and it is not claimed that those facts were found without evidence, and they tend to support the inference.

An exception that the master ought not to have received or considered any of a certain class of testimony is available only in case the master was wrong in every particular.

When a party defends an action at law and afterwards resorts with success to a court of chancery to have the action enjoined, it is not the practice to saddle his opponent with the costs both at law and in chancery but only with the costs of one proceeding.

The granting of the injunction against further proceedings on the part of the defendant is made conditional upon the orators paying into court for his benefit the amount to which he is entitled.

BILL IN CHANCERY. Heard upon pleadings and master's report and exceptions thereto at the May Term, 1897, Windsor County, before *Start*, Chancellor. The bill was dismissed and the orators appealed.

*William Batchelder* and *W. E. Johnson* for the orators.

*Gilbert A. Davis* for the defendant.

ROWELL, J.  This is a bill to enjoin the defendant, assignee in insolvency of Whitcomb, from further prosecuting an action of trover against the orators for goods claimed to belong to the insolvent's estate, and from commencing any other action or proceeding against them in respect thereof.

On April 21, 1893, Whitcomb and Angell, then partners in the furniture business at Windsor, gave to the orators a chattel mortgage of their entire stock in trade, to secure the orators for having the day before signed a demand note with them at the Windsor Savings Bank for $500; and the mortgage was recorded the next day.  Whitcomb and Angell dissolved in August following, Whitcomb assuming the debts and continuing the business.  On Nov. 10, 1893, Whitcomb sold his entire stock to the orators, and gave them a bill of sale thereof, conditioned that they should pay said note, and account to him for the balance, and empowering them to sell the goods for that purpose; and the master finds that it was then understood that the orators should pay over to Whitcomb the amount of the appraisal of the goods, less the amount of said note, according to the terms of the bill of sale, and that the orators had no understanding at the time that they were to pay any other debt of Whitcomb's out of the avails of the goods.  When the goods were sold to the orators, it had been arranged and was expected that they would sell them to Cabot Brothers, competing furniture dealers at Windsor, which they accordingly did in writing the same day, at their cash value in the market, treating them as new, to be appraised by Cabot Brothers and Whitcomb as far as they could agree, and the rest, by a disinterested person, and to be paid for, $500 in thirty days, and $200 a month thereafter, with interest.  This was Friday.  The next Monday, Cabot Brothers commenced moving the goods.  They and Whitcomb agreed on the price of most of them, and a third person fixed the price of the rest.  The entire stock amounted to $1110.  Whitcomb owed a 500-dollar note to

the White River National Bank on which Rix, his brother-in-law, was surety. Sunday night, Whitcomb telegraphed to Rix to come to Windsor, and he came the next day while the goods were being moved. It did not appear that the orators knew when Whitcomb telegraphed to Rix, nor that they had any arrangement with Whitcomb when the bills of sale were executed, as to the payment of the note signed by Rix out of the proceeds of the goods. But after Rix came, he and Whitcomb and Enright conferred together about Cabot Brothers paying to Rix a part of the purchase money. Rix and Whitcomb wanted Rix to have $500 of it, and they asked Enright if he would consent to Rix's having the first $500, and he did consent, whereupon it was agreed when they three and Cabot Brothers were present, that Cabot Brothers should give their note to Whitcomb for $500 at thirty days date, and that Whitcomb should indorse it to Rix, but that it should be placed in Wilder's hands until they knew whether the goods, which had not then all been appraised, amounted to enough to pay that and the savings bank note, which was not to be paid till after the Rix note. This arrangement was carried out; and when it was ascertained that the goods amounted to more than enough to pay both notes, the note in Wilder's hands was delivered to Rix, who immediately notified Cabot Brothers that he held it, and he transferred it to the White River National Bank, of which the bank notified Cabot Brothers in a few days, and they paid it to the bank at maturity. They paid the savings bank note on December 2, 1893, by giving their note therefore for $512.50, the amount due thereon, and gave a check to the orators for $90, and $7.50 in money, which finished paying for the goods. Whitcomb owed Enright $40 for services, and Fitch, $63.43 on book, and when the check and the money came into their hands, they claimed to hold thereout the amount of their debts; but they never made any application thereon, and still hold the check and the money, and at the hearing before

the master, made no claim thereto, but were ready to turn over the same to the assignee.

The master finds that Whitcomb was insolvent when he sold to the orators, and that they then had reasonable cause to believe that he was and that the transaction was intended to prevent his property from going to his assignee in insolvency. He further finds that the transaction, not only in form but in fact, was a sale, both to the orators and by the orators.

Whitcomb was petitioned into insolvency on January 11, 1894, and adjudged insolvent on February 8th, and the defendant was appointed his assignee, and brought trover against the orators for the goods in question, and that is the action sought to be enjoined.

The defendant demurred to the jurisdiction in his answer, for that the orators have an adequate remedy at law. But as the demurrer was not brought on for hearing before the merits were gone into, it was thereby waived; and as chancery has jurisdiction of the subject-matter, namely, of enjoining actions at law, it will retain the case, and deal with it according to the practice of the court. *Holt* v. *Daniels*, 61 Vt. 89; 8 Ency. Pl. & Pr. 175–76.

If the mortgage to the orators was properly executed it was good against the assignee, as it was made more than four months before the filing of the petition in insolvency. But the defendant says it was not properly executed, because the oath does not verify the validity and justice of the liability. This objection was not made below; but as it is one that could not have been obviated, it can be made here. *Dunshee* v. *Parmelee*, 19 Vt. 172.

No question is made nor can be but that the condition of the mortgage states the liability specifically, as required by statute, but the oath is, that the mortgage was made for the purpose of securing the debt or liability specified in the condition thereof, and for no other purpose whatever, and that the same is a just debt or liability, honestly due and owing from the mortgagor to the mortgagees.

As the condition of the mortgage specifically states the liability assumed, and discloses its true character, and shows that the mortgage was given to indemnify the mortgagees against such liability, it is considered that the affidavit conforms to the purpose of the mortgage, and verifies the validity and justice of the liability in substantial compliance with the statute. *Tarbell* v. *Jones*, 56 Vt. 312, is not authority for a contrary holding. There the affidavit was exactly according to the statute, but it was false in every particular, as there never was any debt due from the mortgagor to the mortgagee; while here there was a valid liability, and the affidavit truly states that the mortgage was given to secure it, which clearly means, to secure against loss by reason of it—to indemnify against it. This is a much stronger case than *Gilbert* v. *Vail*, 60 Vt. 261, where the affidavit was held sufficient.

The mortgage, therefore, having been properly executed, is good against the assignee, unless the orators lost their rights thereunder when they bought and sold the goods. If they did, it is because such was the legal effect of the transaction, for it is not found that they intended to abandon their mortgage and rely wholly on their bill of sale, nor is such the inference from anything that is found, but rather the contrary; for although it is found that they in fact bought the goods, yet it was a purchase without a price, and for the sole purpose on their part—for it is not found that they are guilty of fraud in fact—of enabling them to sell the goods to raise money with which to pay the savings bank note, instead of advancing it themselves and resorting to a statutory foreclosure. It is said in *Avery* v. *Hackley*, 20 Wall. 407, that it would be a harsh rule to infer the abandonment of an important lien, contracted in good faith in the prosecution of a legitimate business, unless the evidence on the subject left no other alternative.

The mortgage, then, not having been abandoned in point of fact, the orators' purchase was only of the equity of

redemption, and that, although in contravention of the insolvency law, did not discharge the mortgage lien. This is expressly held in *Avery* v. *Hackley*, 20 Wall. 407, where many cases are referred to in support of the doctrine, one of which is *White* v. *Gainer*, 2 Bing. 23, where the defendant, having a lien on some cloth in his possession, bought it of the tailor after he became bankrupt, and it was held that he did not thereby lose his lien. So if a principal conveys to his surety at a grossly inadequate price his entire interest in property held by the surety as security, that, though fraudulent as to the principal's creditors, does not disentitle the surety still to hold the property as security. *Ripley* v. *Severance*, 6 Pick. 474: 17 Am. Dec. 397. If a note secured by a valid mortgage is given up to the mortgagor upon the execution by him to the mortgagee of a fraudulent conveyance of the premises, the amount of the note being included in the debt intended to be secured by the conveyance, the original mortgage is not thereby discharged, but may be availed of by the mortgagee when the mortgagor's creditors avoid the conveyance. *Ladd* v. *Wiggin*, 35 N. H. 421: 69 Am. Dec. 551.

Nor was the mortgage discharged by selling the goods, certainly not if the orators had a right to sell them, which depends on the efficacy of the mortgagor's consent to sell. Although the mortgagor had a right to insist that in respect of foreclosure the orators should proceed under the statute, yet he could waive that right and consent to a sale by them even before condition broken, for the purpose of raising money wherewith to discharge the liability that the mortgage indemnified against; and the sale, made in accordance therewith, being for a fair price, and in fact mainly negotiated by him, binds him, and foreclosed his equity of redemption as effectually as a statutory sale would have done. *Whitcher* v. *Shattuck*, 3 Allen 319, was replevin by the assignee of an insolvent debtor of goods mortgaged by the debtor to the defendant, who was allowed to show in

defence that by consent of the debtor he took and sold the goods on the mortgage before condition broken.  The court said that although by the terms of the mortgage the debtor had a right to keep possession of the goods, and to use and enjoy them till he was in default, yet he might waive that right and any other right reserved to him by the mortgage, and make a new agreement with the defendant, the mortgagee, for any lawful disposition of the goods. This is a holding that such an agreement is not in contravention of the insolvency law and binds the assignee. Whether the plaintiff could have maintained the action had the defendant taken possession of the goods in violation of the mortgagor's rights, the court said was not a question that required an opinion. *Sparhawk* v. *Drexel*, 12 Bank. Reg. 450, 469, is to the same effect, where it is said that such an agreement was neither actively nor constructively in fraud of the Bankrupt Act, because the prior lien continued, and that the agreement was available to the holders of the lien to the extent of placing them on the same legal and equitable footing as if the securities had originally been received by them under a. contract enabling them to make sale in the manner the agreement authorized.  The court said that it was unnecessary to consider how far an agreement enabling the holders to sacrifice the securities would, if made at such a crisis of insolvency as then existed, have contravened the Act, for the agreement gave no such authority.

In this case the prior·lien continued, and it was lawful to sell the goods for the purposes of that lien, and the fact that the consent to sell for that purpose was accompanied by an intent on the part of the mortgagor—the existence of which the orators had reason to believe—to contravene the insolvency law in respect of the surplus, does not vitiate the consent, and make the sale thereunder unlawful when otherwise it would be lawful, any more than taking a transfer of the equity of redemption in contravention of the

law vitiated the mortgage lien; for a contract that is fair and lawful in itself, cannot be affected by one that is against the policy of the law. *Britt* v. *Aylett,* 11 Ark. 475 : 52 Am. Dec. 282.

The consent to sell, therefore, not being in contravention of the insolvency law, the sale thereunder, made for a fair price and before insolvency proceedings were commenced, binds the assignee also, and passed a good title as to him, and therefore he cannot maintain his action of trover.

But although the orators had a right to sell for the purposes of the mortgage, yet the transfer of the equity of redemption to them was a fraud upon the insolvency law— *Avery* v. *Hackley,* 20 Wall. 407 — and consequently the assignee is entitled to the proceeds of the sale, less the amount appropriated to the purposes of the mortgage, to the extent, if any, that the fraud was not purged by matter *ex post facto,* which it was legally capable of being, as the transaction was voidable and not void.

*Crowninshield* v. *Kittridge,* 7 Met. 520, was assumpsit by the assignee of an insolvent debtor, to recover the value of furniture mortgaged by the debtor to the defendant. The mortgage was given for the double purpose of securing, through the defendant, a *bona-fide* debt due from the mortgagor to a woman who knew nothing of the transaction, and of preventing the mortgagor's creditors from attaching the property, but before the suit was brought, the defendant had converted the property into money and paid the money to the woman to apply on her debt; and it was held that that purged the fraud, as the woman knew nothing of the fraud, and could herself have impeached the mortgage had there been no assignment of the mortgagor's estate, and that consequently the plaintiff could not recover.

This is the settled doctrine in Massachusetts as to voidable conveyances, even of land. *Oriental Bank* v. *Haskins,* 3 Met. 332. The doctrine is not, however,

applicable to void conveyances. *Prout* v. *Vaughn*, 52 Vt. 451.

The Massachusetts cases do not distinguish between payments made pursuant to an agreement made at the time of the fraudulent transaction and a part of it, and payments made pursuant to a subsequent agreement; but the later New Hampshire cases seem to require that the payment should be made pursuant to a subsequent agreement, though the earlier cases did not. *Hutchins* v. *Sprague*, 4 N. H. 469 : 17 Am. Dec. 439 and note.

But here there was a subsequent agreement, pursuant to which $500 of the proceeds went to pay the mortgagor's note to the White River Bank, whereas the original agreement required that the entire surplus be paid to the mortgagor himself. And although in form the Rix note was payable to the mortgagor, and by him indorsed to Rix, yet the real essence of the matter was, that the note was to be devoted, as it was, to the payment of the bank note; and as it was paid before insolvency proceedings were commenced, it purged the fraud *pro tanto*, as the fraud is constructive and not active, the bank being a *bona-fide* creditor without notice of the fraud, and therefore standing like a *bona-fide* purchaser without notice.

But as to the $97.50, balance of the proceeds of the goods, the fraud has not been purged, as the orators still have that in their hands, and the assignee is entitled to it, as the orators practically conceded before the master.

The exception to the admission of proof of the transaction of the Rix note cannot be sustained, for that question was ruled against the orators when the action at law was here. See 67 Vt. 522.

The orators requested the master to report all the testimony on which he based the finding that they had reasonable cause to believe that Whitcomb was insolvent and that the transaction was intended to prevent his property from going to his assignee in insolvency. But

inasmuch as the master states specifically the facts on which he based that finding, and it is not claimed that those facts were found without evidence, and as they tend to support the inference drawn from them, the orators are not entitled to have the report set aside nor recommitted for a non-compliance with that request.

The exception that the report as a whole shows no fraudulent act nor intent on the part of the orators cannot avail; for it is not active, but constructive, fraud that is found against them, and that finding must stand, as it is based upon facts that support it, as we have just said.

The last exception is that the master received and considered against the objection of the orators the testimony stated in the supplemental report. This exception in effect is, that the master ought not to have received nor considered any of that testimony. That report states considerable testimony given by divers witnesses. The objection the brief makes to the testimony is, that it related to matters subsequent to, and disconnected with, the main transaction, and therefore inadmissible. The consequence of such a general exception is, that if the master was right in any one particular, the exception must be overruled. *Green* v. *Weaver*, 1 Sim. 404; *Pearson* v. *Knapp*, 1 Myl. & K. 312; *Candler* v. *Pettit*, 1 Paige 427; *Franklin* v. *Keeler*, 4 Paige, 382. For a distinction between an exception that the master ought not to have done all that he did, and one that he ought not to have done any of it, see *Moore* v. *Langford*, 6 Sim. 323.

Much of this testimony related to the part that the orator Enright took in respect of the Rix note, and as that transaction has been held to be admissible, the testimony concerning it was of course admissible, and as the master was right in admitting it, the exception is overruled.

The orators are, therefore, entitled to an injunction against the further prosecution of said action of trover, with full costs of this suit; but as to that action, they are

not entitled to full costs, for when a party defends an action at law, and afterwards resorts with success to a court of chancery, it is not the practice to saddle his opponent with the costs both at law and in chancery, but only with the costs of one proceeding. The orators defended said action to the extent of a trial on the merits in the county court, where they succeeded, and of a hearing in the supreme court on exceptions, when they were defeated, and it was not till quite a while after all that that they resorted to chancery, and thus they have put the defendant to the expense of a double litigation, whereas they should have elected at an earlier stage of the action at law, and as early as the first term certainly, whether they would resort to chancery or not, and therefore they should pay the costs of that action after the first term and receive costs therein only to and including that term. *Watson* v. *Allcock*, 4 DeG. M. & G. 242; Kerr on Injunctions, *30, pl. 24.

But we cannot restrain further proceedings by the defendant against the orators for recovering the money for which they are liable, without securing the money to him; and therefore, on payment into court of said sum of $97.50, with the interest thereon from the commencement of said action, an injunction will issue, restraining such proceedings also, but not otherwise. *Cotesworth* v. *Stephens*, 4 Hare 185.

*Decree reversed and cause remanded, with mandate.*