## Williams et al. *v.* Smith, Appellant.

*Livery stable keeper's lien—Waiver—Conversion—Denial of title.*

Where a person having a lien on personal property denies the owner's title, he cannot subsequently set up the lien as a bar to the owner's recovery in an action of trespass for the wrongful conversion of the property. Denial of the owner's title is a waiver of the right to detain the property.

In an action of trespass for conversion of horses, where it appears that defendant had a lien for the keep of the horses, and several witnesses testified that defendant, when plaintiffs demanded the horses, refused to give possession on the ground that plaintiffs had no title to them, it is proper to submit the case to the jury, to determine on what ground defendant refused to surrender possession.

Argued Jan. 30, 1893. Appeal, No. 103, July T., 1892, by defendant, James B. Smith, from judgment of C. P. Montgomery Co., Oct. T., 1891, No. 43, on verdict for plaintiffs, George C. Williams et al. Before PAXSON, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL and DEAN, JJ.

Trespass for conversion of two horses.

At the trial, before WEAND, J., it appeared that Matthias Bennett, a horse drover and dealer, brought a lot of horses to the borough of Jenkintown and stabled them at the hotel kept by defendant in the month of March, 1891. The bargain between defendant and Bennett was that defendant should keep the horses at the rate of thirty cents per day each, Bennett to furnish the bedding. Bennett sold all the horses but three, and later on the plaintiffs claimed that he had bought these three horses of Bennett and agreed with defendant that defendant should board them for him at the same price he charged Bennett. Plaintiffs sold and removed one horse but

claimed that when they demanded possession of the other two defendant refused, asserting that they had no title to them. Other facts appear by the opinion of the Supreme Court.

Defendant's points were, among others, as follows:

"1. That Smith had a lien on these horses for the keep of them due from Matthias Bennett which was due and unpaid, and therefore the plaintiffs cannot recover. *Answer:* I cannot affirm this point as stated. Whilst it is true that Mr. Smith had a lien on these horses for the amount due by Bennett for their keep, yet he might have waived that lien by basing his refusal to deliver upon the sole ground that plaintiffs had no title." [1]

4. Request for binding instructions. Refused. [4]

Verdict and judgment for plaintiffs for $364.23. Defendant appealed.

*Errors assigned* were (1, 4) above instructions, and (5) portion of charge recited in opinion of Supreme Court; quoting them.

*Charles Hunsicker,* for appellant, cited, Young v. Kimball, 23 Pa. 193; Sheredine v. Gaul, 2 Dal. 190; Saltus & Saltus v. Everett, 20 Wend. 267; Everett v. Coffin & Cartwright, 6 Wend. 604.

*N. H. Larzelere, M. M. Gibson* with him, for appellee, cited, Bean v. Bolton, 3 Phila. 93; Wagonblast v. McKean, 2 Grant, 393; Andrews v. Wade, 4 Cent. R. 689; s. c. 6 Atl. R. 48; Storeage Co. v. Robinson, 5 Cent. R. 724; Harger v. McMains, 4 Watts. 418; Appleton v. Donaldson, 3 Pa. 383; Macky v. Dilinger, 73 Pa. 85.

OPINION BY MR. JUSTICE GREEN, February 20, 1893:

In the charge of the learned court below the jury were instructed as follows: "Therefore you will see that the plaintiffs in this case were not entitled to the possession of these goods, if Mr. Smith based his refusal to deliver upon the ground that he held them for a board bill on the horses due by Bennett. But if from this testimony you find that his refusal was simply upon the ground that Williams had no title to the property, then the plaintiffs would be entitled to recover, and this is the case in a nutshell." There was evidence of several witnesses that the defendant, when the plaintiffs did demand their horses,

refused to give possession on the ground that the plaintiffs had no title to them, and therefore it was proper to commit that question to the jury. Some of the testimony is as follows: George C. Williams, one of the plaintiffs, testified that he went to the appellant to pay his bill, and, after repeating what was said between them on that subject, he said: " Then he flew up and said, 'Damn you, you don't owe me nothing. Bennett is not coming back. He owes me money. I will keep them until he pays what he owes. You never bought the horses. You are only an agent.' He said, 'You don't owe me nothing. Damn it, you never bought the horses. They belong to Bennett; when I get his bill I will get what Bennett owes me.'" After stating further that when he went the next day to feed the horses he found the stable locked and could not get in, he went in the house and saw Smith again and asked him to take the money. Smith said no. He walked back in the bar and sat in a chair and said, "Damn you, you don't own the horses." Again, in cross-examination he said that Smith said, " You never bought them and you can't have them."

Mather, another witness, after describing a conversation between Smith, Williams and himself, said: " Smith said that morning they were Bennett's horses ; it was only a snide game to beat him." And again : " Williams told Smith he owed him $16.80. Smith said he did not owe him a damn cent; he claimed that the horses belonged to Bennett."

W. H. Thomas testified: " Mr. Smith said that Mr. Williams had offered him the money for the horses, but the horses did not belong to Williams, and as quick as Mr. Bennett paid him the bill he owed him he did not care a damn who had the horses, but he said that the horses did not belong to Mr. Williams and they could not come any damn gyp business on him. He also said that Weaks, one of the plaintiffs, was present.

It seems to us that it would not have been proper for the court to withdraw this testimony from the jury with a binding instruction to find for the defendant. We would be obliged to declare its insufficiency as evidence that the title of Williams was denied, which we certainly could not do. It was verbal testimony, it bore upon the plaintiff's allegation that the title was denied and it was for the jury exclusively to pass upon it.

The jury returned a verdict in favor of the plaintiffs and we

must therefore assume as a fact found that the defendant did refuse to give up the horses to the plaintiffs upon the ground that they had no title to them. It is true that the defendant did also say that he had a bill against Bennett for the board of the horses and another bill against the plaintiffs, and the court instructed the jury that if they found for the plaintiffs the value of the horses they should allow the amount of the bills and deduct it from the value of the horses, and this was done by the jury. In this view of the case there does not seem to be anything for discussion. The denial of the plaintiffs' title was a waiver of the right to detain the horses : Wagonblast v. McKean, 2 Grant, 393 ; Andrews v. Wade, 4 Cent. R. 689 ; Bean v. Bolton, 3 Phila. 93. The defendant was allowed the full amount of his bills for keeping the horses.

Judgment affirmed.