LESLIE W. FOLSOM vs. HARRY W. BARRETT.

Suffolk.   November 19, 1901. — February 26, 1902.

Present: HOLMES, C. J., KNOWLTON, LATHROP, HAMMOND, & LORING, JJ.

*Bailment.   Lien.   Damages.*

One who has a lien for the keeping of a horse does not lose it by refusing to deliver the horse unless paid an amount in fact excessive but which the lienor believes to be due.   In such a case the bailor can discharge the lien by a tender of the true amount due.

Where a bailee of a horse having a lien for his keeping refuses to deliver the horse except upon payment of an excessive amount which he in good faith believes to be due, this does not warrant a finding that the bailee has waived the right to a formal and complete tender of a smaller amount.

Where the bailee of a horse has refused to deliver him except upon payment of an excessive amount for his keeping which he in good faith believes to be due, and the bailor has failed to discharge the lien of the bailee by making a tender of the true amount due, the bailee can recover the expense of keeping the horse after his refusal to deliver him.   If the bailor in such a case intends to revoke the contract for keeping he must manifest that intent.

CONTRACT on an account annexed, containing nearly one hundred items, to recover a balance of $1,007.20 for commissions for buying and selling various horses ; for boarding and training a horse called Sun Pointer, and for other expenses incurred, principally on account of that horse, the property of the defendant.   Writ in the Municipal Court of the City of Boston dated March 16, 1900.

On appeal to the Superior Court the case was tried before *Bond*, J.   The report of an auditor was introduced, by which the following facts appeared :

One class of items in the account related to the board and training of Sun Pointer before July 27, 1899, and another class of items for the board and training of the same horse after that day.   On that day, the defendant demanded the horse Sun Pointer of the plaintiff, who refused to deliver him except upon the payment of $300.96 claimed by the plaintiff to be due him by the defendant for board and other expenses on that horse. There was evidence, that the defendant had paid to the plaintiff from time to time sums amounting to $3,568.50, which the plaintiff had applied to the account of other horses of the de-

fendant boarded with the plaintiff. The defendant denied that there was an indebtedness upon the account of the other horses as large as the sum so applied. No accounts had been rendered by the plaintiff to the defendant until July 27, 1899.

The auditor found that on July 27, 1899, the defendant owed the plaintiff only $129.17. The defendant requested the judge to give the two rulings stated in the opinion of the court. These rulings the judge refused, and gave the ruling also stated in the opinion.

The jury returned a verdict for the plaintiff for the sum of $875.68. Upon a motion for a new trial, the judge ordered a new trial unless the plaintiff should remit from the verdict the sum of $282.03, which was done. This remission did not cover the board of the horse Sun Pointer after July 27, 1899. The defendant alleged exceptions to the refusals to rule and the ruling above referred to.

*W. R. Buckminster*, for the defendant.

*P. B. Runyan*, for the plaintiff.

HAMMOND, J. On July 27, 1899, the plaintiff had a lien upon the horse Sun Pointer, to secure him for the payment of the expenses of its keeping up to that time. The amount due as claimed by the plaintiff was $300.96, and, although requested by the defendant, he refused to deliver up the horse except upon the payment of that sum. The auditor has found that the balance due at that time was only $129.17.

The defendant requested the judge to rule in substance, that (1) if the defendant demanded the horse of the plaintiff and the plaintiff refused to deliver him up except upon the payment of a certain sum which was larger than the sum actually due, then as matter of law the plaintiff wrongfully held the horse; and, (2) if the defendant requested of the plaintiff a statement of the amount due, so that the defendant could pay what was due and take his horse, and if upon that the plaintiff stated that he would not give up the horse except upon the payment of a certain sum then named by him which was materially in excess of the amount actually due, then the defendant was not bound to tender any sum to the plaintiff, and the latter wrongfully held the horse.

The judge refused to rule as requested, but ruled in substance,

that if the plaintiff fraudulently claimed more than was due for the purpose of keeping possession of the horse, he wrongfully kept the horse; but that if he believed the sum due him to be as stated by him at the time he refused to deliver the horse, then the fact that that sum was excessive would not work a discharge of the lien. No instructions were given as to the subject of tender.

Where a lienor bases his refusal to surrender property upon some right independent of or inconsistent with the lien, it is held that he has waived his lien and he cannot afterwards set it up. *Boardman* v. *Sill*, 1 Camp. 410, n. *Dirks* v. *Richards*, 4 Man. & Gr. 574. But that is not this case. Here the plaintiff expressly named his lien and insisted upon it, and there was no question as to its nature. It was for the keeping of the horse a certain definite time. He based his right to hold the horse upon that lien and upon nothing else. His demand, however, was excessive. He was right as to the existence of the lien upon which right alone he was insisting, but wrong as to the amount due. If he fraudulently claimed more than was due he lost his lien, but if his claim was made in good faith, it was still in the power of the defendant to discharge the lien by a payment of the sum actually due. If such a payment had been made at that time, the lien would have been destroyed and consequently the subsequent detention of the horse by the plaintiff would have been wrongful; and that would have been so whether or not the plaintiff honestly believed his claim to be correct. The lien was simply a right to hold the horse until a certain sum was paid, and when that sum was paid the right was gone. The good faith of the plaintiff could not increase that sum. The same result would have followed if a tender of the sum due had been made and refused. Co. Lit. 207 a. *Coggs* v. *Bernard*, Ld. Raym. 909, 917. Bac. Abr. Bailment (B). *Jarvis* v. *Rogers*, 15 Mass. 389, 409. *Schayer* v. *Commonwealth Loan Co.* 163 Mass. 322, and cases cited.

No payment or tender, however, was made; and where, as in this case, there is a lien which is insisted upon by the creditor and his only error is in making an excessive demand which he honestly believes to be correct, the fact that the demand is excessive does not ordinarily relieve the debtor from the necessity

' of making a tender. If the debtor desires to avail himself of this honest mistake of the creditor, he must make or tender payment of the sum actually due, and neither the ability, readiness or simple offer to pay is a tender. There must be an actual production of the money, unless such production be dispensed with by the express declaration of the creditor that he will not accept it or by some equivalent declaration or act. *Thomas* v. *Evans,* 10 East, 101. *Breed* v. *Hurd,* 6 Pick. 356. See Chit. Con. (10th Am. ed.) 890, 891, and cases cited.

We are of opinion, that there is no evidence in this case of any declaration or conduct of the plaintiff which would excuse the defendant from making an actual tender. It is true that the bill recites, that the plaintiff refused to deliver up the horse except upon the payment of the $300.96, but it does not appear that the defendant ever desired or attempted to make, or indeed that he ever was ready to make, any tender whatever, or that the plaintiff ever had any reason to suppose that in any of the interviews with the defendant the latter was thinking of a tender, or was prepared then and there to make it or to make any exhibition of money. Under these circumstances, the simple statement made by the plaintiff at the time the horse was demanded, that he would not deliver him up except upon payment of the whole sum, is not enough to warrant a finding, that he had dispensed with the right to an exhibition of the money of the defendant, or in other words, that he had waived the right to a formal and complete tender; and the judge presiding at the trial was right in declining to instruct as to the law of tender.

The case is clearly distinguishable from *Hamilton* v. *McLaughlin,* 145 Mass. 20, upon which the defendant relies. There being no tender and no lawful excuse for not making one, there was no error in instructing the jury that in this case the lien was not lost by the excessive demand made by the plaintiff in good faith. *Kerford* v. *Mondel,* 5 H. & N. 931. Alderson, B., in *Jones* v. *Tarleton,* 9 M. & W. 675. Jones, Liens, §§ 1025, 1026, and cases therein cited. See also *Fowler* v. *Parsons,* 143 Mass. 401.

That being so, the further question remains whether the plaintiff can hold the defendant personally liable for the expense incurred after the demand. At common law, a lienor not only had the right to keep the object of the lien, but he could do nothing

else with it if he desired to maintain his lien. If he lost possession he lost his lien; if he sold, he was guilty of conversion; and, although there is now quite generally some statutory provision for a sale, still there can be no doubt that in this State it is optional with the lienor whether to enforce his lien under the statute or under the common law. The plaintiff kept the horse as he had a right to keep it, and he kept it for the defendant, that is to say, he kept it so that when the sum due was paid the horse could be delivered up. In keeping the horse the plaintiff was performing a duty he owed to the defendant, which was to keep the horse for him. The horse must be fed or die, and both parties knew that. It does not appear that the defendant ever relieved the plaintiff from that duty by giving him to understand that the original contract by which the charge of keeping was to be at the defendant's expense was necessarily ended by the plaintiff's refusal to give up the horse unless the bill was paid, or that he never should discharge the lien. For aught that appears to the contrary, the defendant may have acquiesced in the position of the plaintiff as reasonable and in accordance with the contract. If he intended to revoke the contract for board he should have manifested that intent. Under these circumstances we think that the law raises a promise on the part of the defendant to pay for the expense incurred after the time of the demand. The horse was left by the defendant in the hands of the plaintiff without the latter's fault, and the plaintiff was bound to take reasonable measures for its preservation. For this expense he may hold the horse or recover against the defendant. See *Great Northern Railway* v. *Swaffield*, L. R. 9 Ex. 132.

*Exceptions overruled.*