## FISK RUBBER CO. OF NEW YORK v. LAWER AUTO SUPPLY, et al.*

(No. 1222; September 3, 1926; 248 Pac. 825.)

Warehousemen—Conversion—Improper Claim Destroys Lien—Appeal and Error.

1. Evidence *held* to show conversion of property delivered to defendant for storage, by refusal to deliver unless bill not connected with storage was paid.

2. Defendants, insisting on payment of another claim in addition to storage charges before surrendering goods stored, waived lien for storage and made further demand or actual tender of amount due for storage unnecessary to recover for conversion.

3. In absence of finding on evidence of value of stored property when converted, cause will be remanded to determine amount of recovery, on reversal of judgment on defendant's counterclaim for storage charges.

Error to District Court, Fremont County; Robert R. Rose, Judge.

Action by Fisk Rubber Company of New York against Lawer Auto Supply and H. C. Lawer. There was judgment for Lawer Auto Supply, on its counterclaim, and plaintiff brings error.

*E. H. Fourt,* for plaintiff in error.

The only question involved is whether the tender was sufficient; the action is for conversion; the Supply Company claims $15.00 per month; the answer of Lawer admits plaintiff's ownership, but denies value of property to be more than $250.00; an objection to a tender, on one ground, waives all other objections that could have been made at the time; an offer made in good faith to redeem, because the right to redeem is denied, is effective if the right to redeem existed; 26 R. C. L. 628. Defendants, having refused tender on ground of insufficiency, cannot asert a different reason; Dorsey v. Barbee, 204 S. C. 12; Moynahan v. Moore, 77 Am. Dec. 468; Thompson v. Warner, 8 Pac. 339; Montelius v. Atherton, 6 Colo. 224. The

provisions of tender applied to plaintiff as well as defendant; 5746 C. S.   A second tender may be made to correct a mistake; Colemas v. Edwards, 5 O. S. 51; Graves v. Burch, 181 Pac. 354.   The creditor waives objection; Wright Co. v. Douglas, 183 Pac. 786; Smith v. Improvement Corp., 187 Pac. 456.   The evidence, in substance, is written and the case may be decided without reference to the findings below.

*Bryant S. Cromer,* for defendants in error.

Plaintiff alleged a demand of the property and tender of the storage charges, but failed to prove said allegations of tender; plaintiff, in fact, demanded that Lawer waive his right to have an old account litigated and the goods attached to secure any judgment which might be obtained by plaintiff, before it paid the storage; plaintiff, in the court below, did not establish the fact of a tender or offer of tender and refusal; the burden of showing tender and refusal is on the party pleading it; to carry this burden, he must show it to have been absolute and free from conditions; 26 R. C. L. 660.

POTTER, Chief Justice.

This is an action brought in the district court of Fremont County by the Fisk Rubber Company of New York, a corporation, against Lawer Auto Supply and H. C. Lawer, defendants.   The former of the two defendants is a corporation and is referred to in the proceedings as "the Auto Supply Company."   The other defendant, H. C. Lawer, is president and was evidently also manager of the Supply Company and conducts some kind of a business, which we find referred to in the evidence as a "store," in the same building occupied by the Supply Company, at Riverton, in said county in this state, which building he owned.   The suit was brought for the recovery of damages for the alleged conversion of certain personal property, which, as listed in an exhibit attached to the petition, is described generally, in the petition and

throughout the proceedings, as "Vulcanizing Equipment," and had been delivered by the plaintiff to the Auto Supply Company for storage on or about February 18, 1921; the petition alleging that the agreed storage price was $10 per month. The value of the property was alleged to have been $1000, and judgment was prayed for $1500, which included alleged expense and attorneys' fees in the sum of $500. The defendant company filed a separate answer admitting the alleged storage, but alleging that the agreed price therefor was $15 per month, and denying each and every other allegation in the petition. Said answer contained also a counter claim for $380.50, which, as alleged in the answer, was made up of the amount due for storage, after deducting the sum of $30 credited on May 3, 1921. A separate answer was also filed by defendant Lawer in which he admitted that the plaintiff was the owner of the property described in the petition, but denied that its value was more than $250, and denied every other allegation of the petition.

The cause was tried to the court without a jury, resulting in a judgment for the Auto Supply Company upon its counter claim in the sum of $410.50, as the amount due up to and including the date of judgment. The plaintiff has brought the case here on error, praying a reversal of that judgment. The judgment recites as findings that the plaintiff has failed to maintain its cause of action and that the allegations of the counter claim of the Auto Supply Company has been proven. Nothing further is recited or stated in the judgment as either a finding or conclusion, nor was any provision made therein for a return of the property to the plaintiffs upon payment of the amount adjudged to be due upon the counter claim, or for any other disposition of the property.

The evidence, aside from the admitted facts of the storage and the respective amounts due therefor up to or at certain dates mentioned in the evidence, and which may be mentioned later in this discussion, consisted of conver-

sations and correspondence between the parties which the plaintiff claimed showed a refusal to deliver the stored property upon proper demand without good cause, and, therefore, a conversion thereof, and the defendants claimed that there had been no valid demand or tender, therefore leaving the Auto Company entitled to the storage charges until the time of the trial. Upon that evidence we are of the opinion that the cause was erroneously decided, not because of the result of any conflict, for the evidence was not conflicting, but amounted substantially to an agreed case upon the facts and clearly established, in our opinion, the plaintiff's case, entitling it to a judgment for such reasonable and recoverable damages, if any, for the conversion as may have been proven.

The evidence can be better stated by quoting parts thereof. Mr. M. B. Purdy, who stated that he had been for the past three years the local manager of the plaintiff company at Billings, Montana, and had been employed by that company for eight years, that he was acquainted with H. C. Lawer, and a Mr. Peach, formerly with the Auto Supply Company, then testified as follows:

"Q. What negotiations, if any, did you have with Mr. Lawer and the Lawer Auto Supply, in regard to vulcanizing equipment that was stored with Mr. Lawer and the Lawer Auto Supply?

A. Well, when I went to work at Billings, there was a vulcanizing Plant stored at the Lawer Auto Supply at Riverton, and I went down to Riverton to get this outfit released, to get it out.

Q. When was that, what time? A. Well, it was in June, Q. Of what year? A. 1921, I think. Q. Who did you talk to about this equipment? A. Mr. Lawer. Q. Where? A. In his store at Riverton. Q. And what was the nature of that conversation?

A. Well, we wanted to pay storage, take the outfit out and pay storage, and Mr. Lawer objected to us taking it out, claiming an old bill against us.

Q.  You offered to pay the storage?  A.  Yes, sir.

Q.  Do you recall how much storage was due at that time?  A.  Well, I think there was about $30.00 or $35.00, something like that.

Q.  And you were offering to pay the $35.00?

A.  Absolutely.   *   *   *

Q.  What did Mr. Lawer say about receiving your offer?

A.  Well, he claimed that he had an old bill against the Fisk Rubber Company.  He said he would not release the outfit unless we paid the old claim.

Q.  How much did he say the old claim was?

A.  $78.11, or something like that—$79.00.

Q.  What further took place?

A.  I told Mr. Lawer that I didn't believe the Fisk Rubber Company owed him any such an amount.  We could not find it on our books; that we were perfectly willing to pay storage, but could not pay him a sum of money that we didn't believe we owed him.  That if he would release the outfit for storage, that the Fisk Rubber Company were big enough so that he could sue for any amount and get the money.

Q.  What did he say about that?

A.  He said that he had the outfit, and that he was just about two jumps ahead of us, and that he was going to hold it.

Q.  Did Mr. Lawer say whose claim that was that he was holding the equipment for?.

A.  His claim.  Q.  And not the claim of the Lawer Auto Supply?  A.  It was the H. C. Lawer claim.

Q.  And did you have authority from the company to make such demand and pay the storage for the company at that time?  A.  Yes.

Q.  Was there any further conversation on that subject on that day in June?''

A.  Well, we was there for several hours in his place, going over his books, and trying to come to some settlement outside of the storage, and we was talking back and

forth. It was all on one subject. We wanted to pay storage and take the outfit out, but he would not allow us to do so until we settled the whole claim.

Q. Did you ever talk to Mr. Lawer after that time?

A. Yes. Q. When? A. It was in last July or in August. Q. What was the nature of the conversation at that time? A. Well, about the same as the first time. We made a demand for the outfit and were willing to pay the storage, and he would not let us have it."

He testified further that he understood from those connected with the company by which he was employed that the agreed price for the storage was to be $10 per month, but he had no personal knowledge about that. He also testified that the Auto Supply Company claimed the agreed storage price to have been $15, and rendered statements of account upon that basis, and that upon making a demand for the property he offered to pay upon the basis of $15 per month. He was then examined upon cross-examination as follows:

"Q. Did you exhibit the money to him? A. No sir. Q. At any time during this conversation? A. No sir.

Q. You didn't, when you made that statement about wanting to take the outfit away, you didn't accompany with your remark a statement that you wanted to take the outfit and settle the old account, did you? A. No sir.

Q. At that time (the first time you talked with Mr. Lawer about the vulcanizing outfit) what was suggested that you pay on the old account?

A. I didn't know we owed Lawer any money on the old account, and don't know it yet, consequently, I didn't propose to him at all.

Q. Did you know he claimed you owed him money? A. Yes. Q. Did you go over your books to check it up? A. Yes. Q. What was the result of that check? A. We didn't find any."

On re-direct, he testified:

"Q.   At that time, when you had the first conversation with Mr. Lawer, you testified you had the money at the time?

A.   I had the money in my purse.

Q.   You were prepared to deliver it over?   A.   Yes.

Q.   Why did you not deliver it over?

A.   Mr. Lawer refused any kind of an agreement on the storage."

On re-cross:   "Q.   And without there being any trouble over this outfit, or the storage of it, you now wish to say again that you went there prepared to make a tender of $35.50 or thereabouts?

A.   The amount of the storage, yes."

Before stating the correspondence between the parties brought into the evidence by the plaintiff, which also clearly presents the situation upon which the case must be decided, we shall quote somewhat from the testimony of Mr. Lawer, a witness for the defendants. He testified that his first start in business at Riverton was in "the harness, ladies' and gents' furnishing business," and gradually worked from that into the auto business, along about 1912 to 1914; that he was president of the Lawer Auto Supply, and had been since its organization; that it was located in a building owned by him, and in which he conducted his other business; that the Auto Supply had been called the Lawer Auto Supply since January 1, 1921, but it was not incorporated until sometime in February. That the Lawer Auto Supply was the concern with which the plaintiff's vulcanizing outfit was stored; that he was the officer of the supply company who made arrangements with Mr. Evans, then representing the plaintiff company and then the manager of the plaintiff at Billings. He

testified concerning the conversation with Mr. Purdy as follows:

"Mr. Purdy asked me how much they owed me for storage and my old bill? Q. And the old bill? A. And the old bill, H. C. Lawer account, and the Lawer Auto Supply account, and I told him.

Q. How much did you tell him, or do you recall?

A. I don't recall the amount.

Q. What did Purdy say in reply to that?

A. He said he wanted the price of the storage, and I gave the price of the storage, and then told him that I didn't intend to let the vulcanizing outfit out of town until the storage was paid, or if he paid the storage I would attach it immediately and grab the outfit. * * *

Q. Did you say in that conversation that you were going to hold that outfit in case the storage was paid?

A. I said I would attach it.

Q. Did Purdy at that time offer to pay you on account of storage?

A. He said he was there for that outfit, and didn't offer to pay it. After I told him what I would do if he paid it, he surrendered."

On cross-examination he testified:

"Q. What did you say about the old bill?

A. He asked me how much the two bills were. I told him—he said he wanted to settle and take the vulcanizing outfit out. I told him that he could settle the bill, but he could never get out of town until the bill was paid; that I would attach it as soon as he paid the storage. Q. Did you ever attach it? A. No. * * * Q. Up to the present time, have you ever brought any action to attach this vulcanizing outfit for the old bill? A. No sir."

In the brief of plaintiff in error our attention is called to the fact that defendant Lawer gave or offered no testimony whatever as to the amount of any individual claim or any "old bill" which he may have had against the plaintiff company. In other words, that he did not attempt to establish the fact upon the trial that he had a valid claim against the plaintiff outside of the storage account. This is explained in the defendant's brief by saying that Lawer, not being a storage creditor, could not, under our procedural statute, have recovered upon his individual claim in this action either through counter claim or set-off. But we need not consider that matter, nor whether evidence as to the fact of the existence of the individual claim made by Lawer might have been admissible to show his good faith in demanding its payment as a condition to his surrender of the stored property.

The material correspondence covers a short period immediately before and after the dates of the conversations above referred to. We quote therefrom the following:

(The Fisk Rubber Company, Billings, Mont., Branch, to H. C. Lawer)

"May 11, 1921.

Mr. H. C. Lawer, Riverton, Wyoming.

Dear Sir:

We understand you have attached vulcanizing outfit which you are storing, for an old bill which you claim we owe you. I have gone over our records here and have looked up your account back as far as June 1918 and apparently our books balance. Under date of September 8, 1919 we gave you credit for two 35x4½ cord tires, credit amounting to $82.24 and again on March 24, 1920 we gave you credit for four red tops, credit amounting to $86.50.

I think that this ought to convince you that you have nothing coming and release vulcanizing outfit at once. If you do not release this vulcanizing outfit so that we

may remove same at once we will turn our complete file up to May 1st over to our legal department for immediate action.

Yours very truly, M. B. Purdy, Manager Billings Branch.''

(Lawer Auto Supply to Fisk Rubber Company)

''Riverton, Wyoming, May 13th, 1921.

The Fisk Rubber Co., Billings, Mont., Dear Sirs:

We have yours of May 11th addressed to Mr. Lawer and we wish to compliment you upon having finally got action toward a settlement of this account. This comes the nearest of being action that the Fisk Rubber Co. or any of its representatives have ever done.

We are enclosing a copy of the account as it appears on Mr. Lawer's books from date of Sept. 2nd 1919. Upon receipt of your remittance for this balance of $78.11 plus balance of $13.00 due us for storage up to May 15th, we will gladly permit removal of the Vulcanizing Outfit. Very truly yours, Lawer Auto Supply, Geo. S. Peach, Secretary.''

(E. E. Lofgren for Fisk Rubber Co. to H. C. Lawer)

''August 10, 1921.

Mr. H. C. Lawer, Riverton, Wyo. Dear Sir:—

You have had considerable correspondence with me, about the Jones Vulcanizing Equipment, and also with the Company about the account between you. This entire matter has been placed with me by the Fisk Rubber Company for attention.

The various statements that you have submitted to the Fisk Rubber Company, together with their ledger sheets of your account have been carefully checked over. The charges made by the company against you and those

credited to the company by you check absolutely without a flaw.  But the credits given you by the Company and those taken by you as a credit are entirely out of alignment.  Under your letter to the Company of May 13, 1921 you state that the company owes you $78.11.  The books of the company show that they did owe you $7.16 by reason of War Taxes refigured and credited but absorbed in a debit of $8.00 for express charges on goods ordered and then refused.  Under date of June 1st, you rendered a bill for storage on the Jones Vulcanizing Equipment of $20.50 due, and the storage, figuring on a basis of up to September 1st next, would amount to $65.50.  However, we made demand for the possession of the Vulcanizing equipment the first part of May, 1921.

Now for the purpose of getting this matter disposed of amicably and satisfactorily, I will make you this proposition.  We will pay storage on the equipment to Sept. 1st, 1921 amounting to $65.50, and pay one half of amount claimed by you of $78.11 or $39.06, making in all $104.56 for the release of this equipment to us.  Mr. Evans, the Fisk Manager here at the time this equipment was placed with you advised me that the storage would be $10.00 per month and authority was given upon that basis, however, there are so many points upon which you and I, as representative of the company could disagree, that it is not advisable and would take up too much time and space to go into all of the matters upon which we differ.

Will you kindly let me have a reply to this communication by return mail, Mr. Lawer, in order that I may be guided thereby.  I am basing the figures of storage and other actions upon the assumption that we will be able to get this determined one way or the other before September 1st next and I have fixed that time.  Then in case that you decide to accept our offer of compromise, it will take up a few days to get down there and arrange to have the equipment shipped up here.  Trusting that you will give

this your prompt and careful consideration, and will let me know your attitude.

Yours very truly, E. E. Lofgren.''

(H. C. Lawer to E. E. Lofgren)

''Riverton, Wyoming, 8/15/21.

Mr. Everett E. Lofgren, Billings, Mont.    Dear Sir:—

Refering to your letter of Aug. 10th., regarding Fisk Rubber Co. account, Answering paragraph two, You evidently did not check my statement with the statement of the Fisk Rubber Co. or you would not state that their charges and our credits check without a flaw.

I will admit that in my letter of the 5/13/21, I agreed to settle for $78.11, But you did not settle, And in checking our account, We found where there were several errors made in favor of the Fisk Rubber Co. ''Refer to our letters and statement of July 12th.'' There were also some errors in favor of us, After correcting these errors, We find that the Fisk Rubber Co. is indebted to us in the amount of $283.62.

There is no doubt in my mind but what if the right man gets acquainted with the books of the Fisk Rubber Company, They will be glad to send a check for $283.62 to balance the account, And $15.00 per month storage on the Equipment. However, If they will have their check here by the first of Sept. to settle the account I have against them, in the amount of $200.00, And a check for $65.50 for Lawer Auto Supply for storage, We will balance our books and be good friends as far as I am concerned, And I hope they will feel the same toward me, But if they prefer to go to court, We expect to recover, My personal account of $283.62, and $15.00 per month storage for the equipment. This is final. Yours very truly, H. C. Lawer.''

There is in the record also a statement of account furnished to the plaintiff by the Lawer Auto Supply showing:

a balance due for storage on June 1, 1921 of $20.50;
adding another month's storage at $15.00 made a total of
$35.50 due July 1, 1921.  This suit was commenced on Oc-
tober 6, 1921, and the trial occurred on July 10 and 11,
1923.  Judgment was rendered on the last mentioned date.
Upon the trial, and in open court, the plaintiff tendered,
first, said sum of $35.50, which was refused for the stated
reason that it did not cover the entire amount due for
storage.  Thereupon, the plaintiff tendered also in open
court the amount of $65.50, as offered on August 10, 1921,
to cover storage charges to September 1, 1921.  That
tender was refused on the stated ground that it did not
include the amount due for storage either up to the time
of trial or to the time suit was commenced.

It is impossible to avoid the conclusion, from the con-
versations and correspondence aforesaid, that from the
beginning of plaintiff's attempt to obtain a release of the
stored property, the defendants refused to surrender the
same unless the individual bill or claim of Lawer was
paid, as well as the amount of the storage for which *only*
either defendant had a lien.  By the continued insistence
of the defendants upon the payment of such additional
sum, the lien for storage was itself waived and furnished
no longer a legal excuse for a failure to return the prop-
erty to the owner, but created a situation making any
further demand on the part of the plaintiff unnecessary
or an actual tender of the amount due for the storage at
the time of the demand, as a condition precedent to a re-
covery in this action for the conversion.  It is true that
Lawer, representing himself and the Supply Company,
declared that if the storage was paid, he would immedi-
ately attach the property for his own individual claim,
which would not otherwise be a lien upon the property.
And that seems to be interpreted by counsel for defend-
ants as amounting to something less than a refusal to
surrender the property upon the payment of the storage

charges. But we think it too clear for controversy that such statement of Lawer was intended to mean, and was understood by plaintiff's representative, and properly so, as meaning that even upon the payment of storage charges, the property would not be released or surrendered to the plaintiff, but the defendants would hold the property in their possession until it could be attached upon legal process for the additional amount that was demanded in addition to storage charges. In other words, we think the statement must be understood as meaning that the property would be attached before its surrender upon the payment of storage charges, or perhaps before payment thereof upon an indication of an intention to pay the same, but without including the individual claim aforesaid. What Lawer said about it, in conversation as well as by letter, clearly indicated, we think, that no opportunity would be afforded to obtain a release and return of the property except upon the payment of his individual claim as well as the amount due for storage.

The principle above announced as to waiver of the lien and the absence of a necessity, under the circumstances, for a further demand or actual tender, is well settled by the authorities. Schouler on Bailments, 3rd Ed., §§ 120-125; Van Zile on Bailments and Carriers, 2nd Ed., §§ 71-72; Carroll v. Mix, 51 Barb. (N. Y.) 212; Scott v. Jester, 13 Ark. (8 Eng.) 437; Folsom v. Barrett, 180 Mass. 439; 62 N. E. 723, 91 Am. St. Rep. 320; Hamilton v. McLaughlin, 145 Mass. 20; 12 N. E. 424; L. I. Brewing Co. v. Fitzpatrick, 18 Hun. (N. Y.) 389; Richmond v. Soportos, 18 N. Y. S. 433; Williams v. Smith, 153 Pa. St. 462; 25 A. 1122; Wall v. De Mitkiewicz, 9 App. Cas. (D. C.) 109; Kolinsky v. Boyajian, 77 Pa. Super. Ct. 461; Rybarczyk v. Rybarczyk, 189 Ill. App. 587; Harnstrom v. Anderson Elec. Car Co., 210 Ill. App. 395; Pierce v. Loo Sing, 27 Ga. App. 577, 109 S. E. 549; Caldwell v. Auto Sales & Supply Co. (Tex. Civ. App.) 158 S. W. 1030; H. E. Wright & Co. v. Douglas, 26 Wyo. 305, 183 Pac. 786; 6 C. J. 1137, § 86,

1150-51, § 113, 1154, § 128; 3 R. C. L. 116-125; 28 Ency. L. 686-7, 105-6; 30 Ency. L. 65; 40 Cyc. 453.

It is said in the text last cited, under the subject of Warehousemen, that upon a refusal to deliver the goods because of a claim against the owner not connected with them, a formal tender of charges is not necessary prior to maintaining an action against the warehouseman, and, further, that it is competent for the warehouseman to waive a formal tender of charges ''as where he refuses to deliver on some other ground than the non-payment of the charges.'' In Van Zile on Bailments and Carriers (§ 72) it is said that by placing the refusal to deliver the property when demanded upon some other ground than the payment of the amount of the storage for which only he has a lien, the bailee ''waives his lien and renders himself liable to an action of replevin for the recovery of the specific property or of trover for its value, for he is guilty of conversion.'' And in support of that statement is cited Hamilton v. McLaughlin, supra, which, as stated in the text, holds that a refusal to deliver the property on demand under and in assertion of a right other than that given by the lien, would be evidence of a conversion. And the discussion is continued in the text by the following: ''The principle of estoppel may also be involved in such a case. The bailee, having placed his claim upon some other and different reason than his claim for compensation, would not be heard to make a different claim in an action against him to recover the possession or value of the property detained by him.''

The law is stated in Schouler on Bailments and Carriers, above cited, as follows:

''But the duty of making compensation must usually precede that of delivery back or over; since the party hired is commonly treated as one entitled, on suitable performance, to require his recompense before surrendering possession. Perhaps, however, delivery and compensation

should be called concomitant acts, so far as one party seeks to put the other in the wrong by active litigation. For his better security in obtaining such recompense, the law gives to the hired bailee a lien upon the chattel, to the extent of whatever may be due for his particular services; * * * The present lien, which is not general, but particular, is understood to secure only one's services and expense bestowed upon the identical thing bailed for hire, and *not* such balance as may be due the bailee's general account for his bailor; for though, by special agreements or a well-sanctioned usage, a lien might be thus extended, the favor of the law shines only upon particular liens. * * * The continuous possession of the hired bailee by right of his lien will, in general, be deemed rightful until his bailor has, besides demanding the chattel, paid or tendered what was lawfully due for the bailment service, and thereby put such bailee in default. * * * Demand and refusal make out a *prima facie* case of negligence against a bailee who renders no good excuse for not delivering; subject, however, to the rules of proof already considered; and the statute of limitations runs from the time of demand. When, however, the bailor or other party lawfully entitled to the thing, makes rightful and seasonable demand without tendering what is due, our bailee, if he has a claim in rem for unsettled recompense, ought promptly to assert it; and so, too, if insufficient recompense be tendered him; that his reasons may be understood. *If he refuses to surrender possession, unless paid for what the lien does not lawfully give, he is liable as for conversion."* (Italics ours.)

It is said in 28 Ency. L., above cited, that "if a bailee, upon demand for possession, refuses to deliver, placing his refusal upon other grounds than his right to detain the chattels under a possessory lien, he thereby waives such lien, and the refusal to deliver constitutes a conversion."

In Folsom v. Barret, supra, the general principle involved here was stated, the court saying:

"Where a lienor bases a refusal to surrender property upon some right independent of or inconsistent with the lien, it is held that he has waived his lien and he cannot afterwards set it up." But the excessive claim in that case was made in good faith, believing that the sum was due him as a matter of lien, and the court said that the party had expressly named his lien and insisted upon it and based his right to hold the property upon the lien and nothing else, though his demand therefor was excessive. "He was right as to the existence of the lien, but wrong as to the amount due. If he fraudulently claimed more than was due, he lost his lien, but if his claim was made in good faith, it was still in the power of the defendant to discharge the lien by a payment of the sum actually due."

In Brewery Company v. Fitzpatrick, supra, the court said: "A formal tender for the purpose of discharging the lien of a bailee after he has actually disavowed the bailment and refused to deliver the goods to the bailor, on the grounds that he is not entitled to them, cannot be necessary, for the law never requires the performance of a superrogatory act." In the District of Columbia case above cited, it was held, quoting from the syllabus: "The failure to make a technical tender of storage charges will not render a demand upon a warehouseman for the delivery of property in his possession ineffectual as preliminary to an action of replevin, where the demand was refused by the warehouseman upon other and distinct grounds."

The judgment must be reversed. The plaintiff was entitled upon the uncontradicted evidence to a judgment for such recoverable damages for the conversion as may have been proven; and a judgment for the plaintiff will be directed. But, although competent evidence of the value

of the stored property at the time of the conversion was introduced by the plaintiff to show its damages, there was no finding upon such evidence, and another trial for the purpose of determining the amount of the recovery will be necessary. An order will therefore be entered reversing the judgment and remanding the cause to the district court with directions to enter a judgment for the plaintiff for the reasonable value of the stored property on September 1, 1921 as may be found to be established upon a trial to be had upon, and confined to, the question of the amount of damages.

*Reversed and Remanded with Directions.*

BLUME and KIMBALL, JJ., concur.