## CARR *v.* CALDWELL, (ADMINISTRATOR OF VERMULE, DECEASED,) AND JANE VERMULE.

V., a married man, purchased a lot of land of G., and gave a mortgage on the lot to G. for the purchase-money; G. subsequently obtained a decree of foreclosure of the mortgaged premises. On the day advertised for the sale, and just before the sale was to take place, V. borrowed of C. money for the purpose of paying off the mortgage and decree, and agreed to give C. a mortgage on the premises to secure the money so loaned; V. paid off the decree, and G.'s mortgage was satisfied. Within a few minutes thereafter, V. gave a mortgage to C. on the premises, in accordance with his agreement. V.'s wife did not join in the mortgage. At the time of C.'s loan, and the execution of the mortgage therefor, the premises were occupied by V. and his wife as a homestead; V. died soon after, and his wife claimed the premises as a homestead: *Held*, that C.'s mortgage took the place of G.'s, and was and is a valid lien on the premises, to the extent of the money applied to the satisfaction of G.'s mortgage. The satisfaction of G.'s mortgage, and the execution of C.'s, were cotemporaneous acts.

In equity and in effect, the advance of the money by C., under the circumstances, to pay off the purchase-money due, was equivalent to so much purchase-money. The debt was, to all intents and purposes, the same, though the condition was changed.

Such a demand is not a *claim*, in the sense of the statute, against the estate of the deceased. Suit was properly brought in the District Court, and the administrator was a proper party for the purpose of liquidating the amount of the indebtedness.

APPEAL from the District Court of the Third Judicial District, County of Santa Clara.

This was a bill in equity, filed by the plaintiff, for the purpose of obtaining a decree of the Court for the sale of certain premises, mortgaged to the plaintiff by one Thomas L. Vermule, who has since died. The Court below decreed that the sum of $726 81, a part of the mortgaged debt, with the interest thereon, was a valid and subsisting lien on the mortgaged premises, su-

perior to any right, title, or claim, held by the said defendants, or either of them, upon said premises, and that said premises be sold for the purpose of paying that sum.   The defendant Jane Vermule appealed to this Court.

The other facts in the case appear in the opinion of the Court.

*Vories and Archer* for Appellant.

The doctrine of subrogation only applies in favor of one who was surety for, or has been compelled to pay the debt of another to protect his own rights, or when there is an agreement with the creditor who receives the money to substitute the one paying it, to his rights.   See Sandford *v.* McLean, 3 Paige C. R., 117; Douglass *v.* Fogg, 8 Leigh, 588; Gadsden *v.* Brown, Spear's Ch. R., 37; Steamboat P. H. White *v.* Levy, 5 English, 411; Armstrong's Appeal, 5 Watts & Serg., 352; 1 Leading Cases in Equity, 117, 118, 119; Notte et al. *v.* Their Creditors, 9 Martin, 690; Matthews *v.* Aiken, 6 Mo., 52.

The doctrine of subrogation is founded on an equitable obligation, that rests upon one who has compelled a third person to pay for another, for which said debt said creditor had other and independent securities, to assign such securities to the one who had been compelled to pay the debt, to secure himself against loss.   Where such creditor fails or refuses to so assign such securities, a Court of Equity will substitute such person to his rights. Liddesdale's Ex'rs *v.* The Ex'rs of Robinson, 12 Wheaton, 534; Story's Equity, § 499, *et seq.;* also, authorities above cited.

The case of Mansh *v.* Rice, 1 N. H. R., which is relied upon by the Court below to sustain its decisions, is not in conflict with the positions above taken, and wholly fails to sustain the decree of the Court below.   In that case, the agreement was made with the persons who held the prior lien, and who, by virtue of the agreement, received the money, which imposed upon them an equitable obligation to assign their securities to the purchaser who advanced the money—which they attempted to do, but performed it in an indirect way.   The Court decided that the effect of the whole transaction was the assignment of the mortgage to the persons who were substituted to their rights by the Court: the whole arrangement having been made with the privity, and part of the money received by the person who claims the legal right and resists the substitution.

In the present case, Carr was a mere volunteer; was under no obligation to advance money to pay the debt to Gordon, and was in no wise interested in it.   He had no agreement with Gordon in reference to the money advanced—in fact, it does not appear that Gordon even knew where the money came from. Therefore, Gordon was under no obligation to assign his lien to him, or to keep it alive for his protection.   On the contrary, it was the agreement between Carr and Vermule that the lien of

Gordon should be paid off and entirely extinguished for the purpose of enabling Carr to take an independent mortgage or security in his own favor. The whole case shows that Carr never looked to being substituted to the rights of Gordon, but wholly depended upon the security of his own mortgage.

In this case, the lien for the purchase-money (if any existed at the time) was wholly extinguished by the payment in full of the Gordon decree, who received the money from the sheriff without knowing that Carr had anything to do with it, and gave a full receipt, and fully discharged his mortgage and vendor's lien. It was the contract between Carr and Vermule that it should be extinguished, and when extinguished the right to substitution is forever gone. Foster v. Trustees, etc., 3 Ala. R., 302.

It is submitted, in this case, that a Court of Equity would never interfere to keep alive a lien (after the debt had been paid) in favor of one who had contracted that it should be wholly extinguished. The money paid or advanced by Carr, was applied to the payment of a decree in favor of Gordon, which decree was rendered upon the foreclosure of a mortgage, which mortgage had been taken by Gordon a month after the land had been conveyed to Vermule. Jane Vermule was no party to the mortgage, nor was she a party to the decree, and as Gordon proceeded on the mortgage, and not upon the vendor's lien, the right of homestead attached in favor of Jane Vermule as against the decree, to which she was no party. Therefore, if Carr had any right to be subrogated, it was only to be subrogated to the benefit of the decree rendered on a mortgage to which said defendant was no party, and her right to the benefit of a homestead would be unaffected. Story's Eq., 1226 to 1233, and notes.

The District Court had no jurisdiction of this case, the whole matter being properly and only cognizable before the Probate Court, where the money could have been distributed and paid out, in conformity to the laws of this State regulating the settlement of the estates of deceased persons. See Revised Stat., § 136, Act relating to Estates of Deceased Persons; also, §§ 122, 123, 202, 203; Ellissen v. Halleck et al., 6 Cal. R., 386; Beckett v. Selover, 7 Cal. R., 215.

*A. L. Rhodes* for Respondent.

The final decree of the Court is correct. Neither Vermule nor his wife had or claimed any right or title to the said real estate, except the title acquired by the purchase from Gordon, and the conveyance from Potter and wife, made in accordance with Gordon's sale, and at his instance—Potter and wife holding the title in trust for Gordon.

It is fully proved that Gordon's mortgage was executed to secure the purchase-money of the land mortgaged, due from Vermule to Gordon; and the interval between the dates—not the

Carr v. Caldwell and Vermule.

delivery—of the deed and mortgage being accounted for by Potter's residence at another place, the making of the deed and the note and mortgage were truly cotemporaneous acts.

Vermule had no right to a homestead in the real estate until after the delivery of the Potter deed, and not even then as against the Gordon mortgage, given to secure the purchase-money, and delivered at the same time as the deed.

It is true, beyond all question, that Mrs. Vermule had no other or greater right to a homestead than that held by her husband, and that the death of her husband has not, in any manner, enlarged her right in that respect.

Could Thomas L. Vermule, if living, resist the enforcement of Carr's equitable claim against this real estate, on the ground that it is his homestead ?

Except for the application of Carr's money to the payment of Gordon's decree, on foreclosure of his mortgage, the money having been procured for that purpose with the knowledge and assent of both Vermule and Carr, the real estate would have been sold, and all of Thomas L. Vermule and his wife's legal or equitable right to a homestead therein would have been extinguished, and the land should, therefore, after having received the benefit of the money, be charged with the burden of the debt; or, to adopt the more forcible and correct language of the Supreme Court, in Lassen v. Vance, 8 Cal., 271—Carr's money being regarded in equity as a part of the purchase-money : "The money of the plaintiff paid for the lot, and it would certainly be an exceedingly harsh rule of law that would defeat the mortgage upon the very property purchased with the money furnished by himself."

The payment to Gordon, and the execution of the mortgage and note to Carr, may be regarded as simultaneous acts, in the same manner as the satisfaction of the old and the execution of the new mortgages were regarded in the case of Dillon v. Byrne, 5 Cal., 455.

If Carr had taken an assignment of the Gordon mortgage, or had purchased the land at sheriff's sale under the decree, and had sold it to Vermule, taking his mortgage for the purchase-money, Carr's claim in equity would not have been stronger than it now is.

The money loaned by Carr to Vermule, with the understanding and agreement that it should be applied, and which was then applied, to the payment of Gordon's decree, was in substance and effect a part of the purchase-money of the land sold to Vermule, and its character was not changed by a change in the securities.    See Dillon v. Byrne, 5 Cal., 455.

*Wallace and Ryland* for Respondent.

[After taking similar ground to that taken by Mr. Rhodes, and

arguing the equities of the Carr mortgage over the claim of appellants, made the following additional points :]

Equity will subrogate a party in the case supposed by the counsel for the appellant, but it is not the only case by any means.

There are three kinds of subrogation :

1. That made by the owner of a thing of his own free will; example—when he voluntarily assigns it.

2. That which arises in consequence of the law, even without the consent of the owner; example—when a man pays a debt which could not be properly called his own, but which, nevertheless, it was his interest to pay, or which he might have been compelled to pay for another, the law subrogates him to all the rights of the creditor.

3. That which arises by the act of law, joined to the act of the debtor : as when the debtor borrows money expressly to pay off his debt, and with the intention of substituting the lender in the place of the old creditor. 1 Dall., 164; 6 Watts, 134; 7 Watts, 362; 6 Binn., 333, 422. See, also, Bouvier's Law Dictionary, vol. 2d, 555, (edition of 1855,) Title "Subrogation," and the numerous authorities there cited. The third class of subrogation, above cited, it is submitted, is precisely the case of the respondent. See, also, Harris v. Lee, 1 P. Williams, 482; Marlow v. Petfield, 1 Ib., 558.

The case of Dillon v. Byrne, 5 Cal., 455, is directly in point in this case, and the application to this case, of the principles there laid down, it is respectfully submitted, must work an affirmance of the decree of the Court below.

BALDWIN, J., delivered the opinion of the Court—TERRY, C. J., and FIELD, J., concurring.

Carr, the plaintiff below, filed his bill to subject to sale a lot in San José. It seems that one Vermule bought this lot in 1853, of one Gordon, (one Patten holding the title, as trustee,) on credit, giving a mortgage for the purchase-money ; in 1854, some $700 were due, after deducting the payments. For this balance Gordon sued Vermule, and obtained a decree of foreclosure and sale. On the day advertised for the sale, and just as it was coming off, Vermule borrowed some money of Carr, a part of which was to be applied to the payment of this decree and mortgage, and a mortgage to be executed to Carr on this property. The money, or enough of it, was so applied, and the mortgage of Gordon satisfied, when, or within a few minutes thereafter, Vermule—his wife not joining in the deed—conveyed by mortgage to Carr, in pursuance of this arrangement. At the time of this arrangement, the lot was occupied as a homestead. Vermule died shortly afterwards. The lot was set off, by proceedings under order of the Probate Court, to the widow, as home-

stead property.   The claim of Carr was presented to the defendant Caldwell, administrator of Vermule, and allowed, but the estate was, and is, entirely insolvent.   This suit was brought in the District Court.   Carr claims that the mortgage of Gordon, having been paid off by money loaned by him to Vermule for that purpose, under agreement to give him a mortgage on the premises for his loan, he ought to be permitted to stand in the place of Gordon; and it would seem, on every principle of justice and equity, that he is right.   We think his claim as clear in law as it is in justice.   The proof shows that the execution of Carr's mortgage was made on the same day—one witness states within ten minutes—of the date of the payment of Gordon's decree. The satisfaction of Gordon's mortgage, and the execution of Carr's, may be said to be cotemporaneous acts.   It cannot be doubted that if the note and mortgage of Gordon had been renewed, the homestead would have continued bound.   Can it make any difference in equity whether the first debt be renewed or another debt—if it *be* another—for the same sum created, to raise money to pay off the first?   A clear title to the homestead could not vest until the payment of the purchase-money.   In equity and in effect, the advance of the money by Carr, under the circumstances, to pay off the purchase-money due, was equivalent to so much purchase-money.   The debt was to all intents and purposes the same, though the creditor was changed. The authorities cited by the respondent, and especially 1 Dall., 164; 6 Watts, 134; 7 Watts, 362; and Dillon *v.* Byrne, 5 Cal., 453; 1 N. H., 168; support this view; and if we could find no case to support it, the sense and apparent justice of the rule would go far towards inducing us to adopt it.

Nor is the ground taken by the appellant, that the District Court had no jurisdiction, sustainable.   This is not a *claim*, in the sense of the statute, against the estate of the deceased.   The administrator was a proper party for the purpose of liquidating the amount of the indebtedness.   But the main purpose of the bill is not to obtain a decree for, and sale of, property of the decedent, nor to affect assets in the hands of the administrator, but to subject land bound for the debt of the decedent, which does not belong to his estate, but the title to which is in the defendant, Jane Vermule.   Whether the plaintiff can subject it or not, it does not belong to the estate of the decedent.   None of the evils at which the statute aims in denying a right of suit to a party against an administrator has any application to such a case; while no course of proceeding that we are aware of could compel or authorize an administration of this property by the Probate Court, or the administrator.   So that if this proceeding be not proper, we know of no other that would reach the case.

25

A clear right would exist without a remedy. Besides, the administrator is not here to complain, and could not if he were.

We think the decree should be affirmed.