[Civ. No. 1015. Fourth Appellate District.—October 6, 1932.]

ARTHUR FULLER, Appellant, v. SUE HARWELL et al., Respondents.

A. L. Sebille for Appellant.

Hickcox & Trude for Respondents.

MARKS, J.—Appellant brought this action seeking to have it decreed that he was subrogated to the rights of the Los Angeles First National Trust and Savings Bank, hereafter referred to as the respondent bank, the mortgagee named in a chattel mortgage executed by Sue Harwell on certain cattle in Imperial County, which mortgage was paid by appellant upon the demand of the respondent bank after appellant had caused the levy of an execution upon the cattle under a judgment which he held against T. J. Harwell, husband of respondent Sue Harwell. The trial court sustained general and special demurrers to appellant's first amended complaint with leave to amend. Appellant failed to amend and is here on appeal from the judgment entered against him.

While the separate demurrers of respondents were both general and special, counsel do not seriously consider the grounds of special demurrer in their briefs but confine their arguments and citations of authorities to the general demurrers. We will therefore consider the sufficiency of the allegations of the first amended complaint as tested by the general demurrers to determine whether or not a cause of action is stated.

Both parties refer to and respondents stress the facts and decision in a former action in which Arthur Fuller was plaintiff and Sue Harwell and T. J. Harwell were defendants, decided by this court in 1931 (*Fuller* v. *Harwell,* 117 Cal. App. 280 [3 Pac. (2d) 592]), and which furnishes the historical background of the instant case, as the chattel mortgage, judgment, livestock and execution there mentioned were the same as those involved here. We stated the facts of the earlier action as follows: "On or about June 13, 1927, plaintiff recovered a judgment against the defendant, T. J. Harwell. On May 9, 1928, an execution was issued and a levy made upon the live stock described in plaintiff's complaint in the action now here on appeal. The defendant, Sue Harwell, filed a third-party claim against which the plaintiff indemnified the sheriff. Thereupon Mrs. Harwell gave an undertaking pursuant to the provisions of the Code of Civil Procedure and the property was released to her. This action was subsequently filed and the only issue involved here is whether or not this personal property so released was the separate property of the defendant, Sue Harwell, or the community property of both defendants and therefore subject to the levy of the execution. The trial court found that the property was the separate property of Mrs. Harwell and rendered a judgment in accordance with such finding." We affirmed the judgment of the trial court, holding that it was supported by the evidence although the evidence upon the question of the ownership of the cattle was conflicting.

It should be stated that the first amended complaint before us is far from a model pleading and that counsel for appellant, by refusing to amend his pleading, seriously endangered his client's chances of ever recovering the $820 which he paid to the respondent bank.

The allegations of the first amended complaint may be summarized as follows: On June 13, 1927, appellant recovered judgment in the sum of $4,884.73 against T. J. Harwell in an action in the Superior Court of Imperial County; on May 9, 1928, there was unpaid on this judgment $2,233.11, for which execution was issued and levied on the cattle already mentioned as the property of T. J. Harwell; at the time the respondent bank had a chattel mortgage executed in due form by Sue Harwell upon which there was unpaid on the principal the sum of $820; the chattel mortgage was recorded in the office of the county recorder of Imperial County; after the levy of the execution the respondent bank made demand upon the sheriff and appellant for the payment of the chattel mortgage; in order to protect the lien of the execution and prevent the release of the cattle, appellant on May 17, 1928, paid the respondent bank the full amount of the mortgage indebtedness of Sue Harwell to it; the payment was accepted as a full discharge of the mortgage and the note secured thereby; Sue Harwell, wife of T. J. Harwell, filed with the sheriff a third party claim in which she claimed the sole ownership of the cattle; appellant filed a bond with the sheriff to prevent the release of the cattle to the third party claimant; and, on June 11, 1928, Sue Harwell filed an undertaking to release the property, which was approved and the property released to her.

Appellant then instituted his action to have the cattle declared the community property of Sue Harwell and her husband, and before the decision in that cause became final (*Fuller* v. *Harwell, supra*), instituted this proceeding.

The sole question to be decided on this appeal is whether or not appellant was subrogated to the rights of the respondent bank on his paying the chattel mortgage on the cattle. He bases whatever rights he may have gained by payment of the mortgage upon the provisions of sections 2903 and 2904 of the Civil Code. The latter section provides as follows: ''One who has a lien inferior to another, upon the same property, has a right: 1. To redeem the property in the same manner as its owner might, from the superior lien; and, 2. To be subrogated to all the benefits of the superior lien, when necessary for the protection of his interests, upon satisfying the claim secured thereby.''

Respondents urge that there can be no subrogation of appellant to the position of the mortgagor in the chattel mortgage for two reasons: first, that appellant was never in the class of "one who has a lien inferior" to the chattel mortgage on the mortgaged property; and, second, that in paying the chattel mortgage he was a mere volunteer and as such could not be subrogated to the rights of the mortgagor. We will consider these questions in the order stated.

The meat of respondents' first contention is found in the fact that the mortgaged cattle were finally adjudged to be the separate property of Sue Harwell. From this they argue that an execution wrongfully levied upon the cattle to enforce a judgment against the husband could not constitute the judgment creditor a junior lienor as the levy of an execution can only create a lien on the interest of the judgment debtor in the property levied upon, and as T. J. Harwell had no interest in the cattle the levy did not give appellant any lien upon them.

In considering this phase of the case it should be borne in mind that appellant was a judgment creditor of T. J. Harwell, husband of Sue Harwell, and that there was $2,233.11 unpaid on this judgment; that he apparently in good faith contended that T. J. Harwell had some interest in the mortgaged cattle until after our decision of the case of *Fuller* v. *Harwell, supra;* that he levied upon the mortgaged cattle in an attempt to subject this supposed interest of T. J. Harwell to the lien of the execution; that the mortgagor demanded payment of its mortgage or the release of the cattle; that the cattle would have been released had the mortgage debt not been paid; that to prevent the release of the cattle appellant paid the mortgage debt; that the debt so paid was the debt of Sue Harwell and that it has not been paid by her; that more than three years after the levy of the execution and the payment of the mortgage debt by appellant it was judicially determined that T. J. Harwell had no interest in the mortgaged property.

The general rules prevailing in California on the question of the subrogation of one who pays the debt of another to a creditor are clearly stated by the Supreme Court in the case of *Redington* v. *Cornwell,* 90 Cal. 49 [27 Pac. 40, 42], as follows:

"In *Mosier's Appeal*, 56 Pa. St. 76 [93 Am. Dec. 783], Thompson, C. J., said: 'I regard the doctrine (of subrogation) as applicable in all cases where a payment has been made under a legitimate and fair effort to protect the ascertained interests of the party paying, and when intervening rights are not legally jeopardized or defeated. Such payments, whatever might be their effect at law as extinguishing the indebtedness to which they apply, will not be so regarded in equity, if contrary to equity to regard them so.' (See, also, *McCormick* v. *Irwin*, 35 Pa. St. 111; *Heart* v. *Bryan*, 2 Dev. Eq. (N. C.) 147; *Wall* v. *Mason*, 102 Mass. 316; *Robinson* v. *Leavitt*, 7 N. H. 99.) The case of *Guy* v. *Du Uprey*, 16 Cal. 198 [76 Am. Dec. 518], recognizes the principle that a payment is not voluntary when made by a party who is interested in having the payment made. In the first section of Sheldon on Subrogation, the author, by way of definition, gives the following, which, so far as it goes, seems to be well sustained by the authorities cited: 'It is the substitution of another person in the place of a creditor, so that the person in whose favor it is exercised succeeds to the rights of the creditor in relation to the debt. The substitute is put in all respects in the place of the party to whose rights he is subrogated. It is derived from the civil law, from which it has been adopted by courts of equity. In this country, under the initial guidance of Chancellor Kent, its principles have been more widely developed, and its doctrines more generally applied, than in England. It is treated as the creature of equity, and is so administered as to secure real and essential justice, without regard to form, and is independent of any contractual relations between the parties to be affected by it. It is broad enough to include every instance in which one party pays a debt for which another is primarily answerable, and which, in equity and good conscience, should have been discharged by the latter; but it is not to be applied in favor of one who has, officiously and as a mere volunteer, paid the debt of another, for which neither he nor his property was answerable, and which he was under no obligation to pay; and it is not allowed where it would work any injustice to the rights of others.' "

■ There is a long line of cases in California which rather effectually support the conclusion that if a judgment debtor has an apparent interest in mortgaged property at the time of the levy of an execution, the purported lien created by a levy upon such apparent interest of the judgment debtor is sufficient to support a subrogation to the rights of a mortgagor whose debt is paid by the judgment creditor in an honest endeavor to protect the lien of his levy even though it be subsequently decided that the judgment debtor had no actual interest in the mortgaged property levied upon. (*Carr* v. *Caldwell,* 10 Cal. 380 [70 Am. Dec. 742]; *Swift* v. *Kraemer,* 13 Cal. 526 [73 Am. Dec. 603]; *Tolman* v. *Smith,* 85 Cal. 280 [24 Pac. 743]; *Van Sandt* v. *Alvis,* 109 Cal. 165 [50 Am. St. Rep. 25, 41 Pac. 1014]; *Ackerman* v. *Merle,* 137 Cal. 169 [69 Pac. 983]; *Lean* v. *Givens,* 146 Cal. 739 [106 Am. St. Rep. 79, 81 Pac. 128]; *Fritz* v. *Mills,* 170 Cal. 449 [150 Pac. 375]; *Simon Newman Co.* v. *Fink,* 206 Cal. 143 [273 Pac. 565].)

The case of *Fritz* v. *Mills, supra,* is very similar in principle to the instant case. In that case it appears that Laura J. E. Mills was the owner of a lot in San Francisco which Martha A. Fritz maintained Mrs. Mills agreed to sell to Charles W. Reed, Mrs. Fritz's predecessor in interest, by a verbal contract of purchase and sale. The property was encumbered by a mortgage. The action was for specific performance, and during the proceedings in the trial court the plaintiff was ordered to deposit in court the agreed purchase price of the property. Part of this money was, on order of court, paid to the mortgagor and the mortgage released. It was subsequently determined that there was no legal and binding contract of sale of the property and that Reed and his successors had no interest in it. They were, however, subrogated to the rights of the mortgagor for the reason that they had paid, under the compulsion of an order of court, a debt of Mrs. Mills which she, in good morals and in equity, should pay. In the instant case it appears from the pleadings that appellant paid the mortgage on the cattle under compulsion of the statute which would have compelled the release of the property from the execution had he not paid the mortgagor, and that the debt paid by appellant was a debt of Sue Harwell which in good morals and in equity she should pay.

In considering the second contention of respondent it should be borne in mind that appellant paid the mortgage debt upon demand of the mortgagee and under compulsion of the statute to prevent the release of the cattle from the levy of the execution. If it does not already appear from what we have said that appellant was not a volunteer in paying the mortgage, this is made clear in the case of *Simon Newman Co. v. Fink, supra.* It is there held that, where a party advances money to pay off a prior mortgage, either at the request of the owner of the property or the holder of the mortgage, under circumstances from which it may be implied that the payment is made to secure a first lien upon the property, such party is not a volunteer in making the payment.

Judgment reversed.

Barnard, P. J., and Jennings, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on November 1, 1932, and an application by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on December 2, 1932.