[L. A. No. 21335.   In Bank.   May 4, 1951.]

JACK R. STEIN et al., Respondents, v. RUSSELL BROWN SIMPSON, Appellant.

Joseph D. Taylor and John W. Hill for Appellant.

Cobb & Utley and Ernest R. Utley for Respondents.

CARTER, J.—This is an appeal from a judgment quieting plaintiffs' title to real property on the condition that they pay defendant Simpson $12,000, less costs, within 30 days from notice of entry of the judgment. Simpson claims the amount payable should be $28,911.87.

From the unchallenged findings of fact the following appears. Plaintiffs were the owners of property having a value of over $50,000. It was encumbered by a first trust deed securing a debt owed to Hollywood State Bank amounting to $18,000. Simpson loaned $20,000 to plaintiffs and demanded and received therefor two notes, each for $22,000, the additional $2,000 on each being a bonus demanded by Simpson. The notes called for interest at 7 per cent. One of the notes was secured by a second trust deed on the property and the other by a chattel mortgage on the furniture. At Simpson's request the notes were made payable to a third party, Simons (an employee of Simpson) who was to and did assign them to Simpson. (That was an attempt to avoid a claim of usury.) Each of the notes was payable in monthly installments of $2,000 from August 24, 1946, to January 24, 1947, when the balance became due. The $2,000 bonus was usurious interest charged by Simpson. Plaintiffs paid $8,000 on the notes, reducing the principal to $12,000, in accordance with the notes and a subsequent understanding in which additional interest amounting to $240 was to be paid. Various proper tenders of the balance due were made by plaintiffs or their agent to Simpson or his agent and refused. Simpson gave notice of default and election to sell, and the sale of the property under the trust deed was scheduled for July 23, 1947. It was continued from time to time at Simpson's request to September 10, 1947, at 10 a. m. An hour before the sale, plaintiffs offered to pay the full amount which Simpson claimed was then due, and Realty Title Company, Simpson's agent for collection from plaintiffs, and trustee under the trust deed, advised plaintiffs that $16,641.13 was all that was required. Thereupon, and still before the sale, plaintiffs made a cash tender to Simpson of $17,000. The tender was refused, Simpson stating that he was interested in acquiring the property, not the money. The sale proceeded, Simpson bidding $36,000 and plaintiffs' agent, Bassett, $50,000. Bassett having only $17,000 in cash with him, the title company, at Simpson's request, declared "all bids off" and started a new sale. The title company then announced that Simpson had paid the plaintiffs' debt to the Hollywood State Bank under the first trust deed in the sum of $17,380.85, and hence the sale would be for the amount represented by both trust deeds. Simpson had paid the bank the amount due on the first trust deed the morning of the sale. Bassett's request for a 24-hour postponement of the sale to obtain funds to cover his $50,000 bid was

refused at Simpson's direction. The sale proceeded, Bassett bidding $17,000 and Simpson $18,000. The property was sold to Simpson. The court found the sale invalid; that the amount owed by plaintiffs to Simpson under said notes and trust deeds was $12,000 and that amount is due without interest.

The foregoing facts are undisputed, and with the other facts found, depict a shocking and unconscionable course of conduct by Simpson.

The court also found: "That in the payment to the Hollywood State Bank of the sum of $17,380.85 in satisfaction of its first trust deed, Simpson did not secure from the bank an assignment of said indebtedness, and his aforesaid satisfaction of said bank's note and trust deed was not disclosed to plaintiffs either at the time of their aforesaid redemption tender on said date or prior to the time Bassett had bid the sum of $50,000 for said property.

"That the Trustee's sale under Simpson's second trust deed advertised said property for sale subject to the Hollywood State Bank's first trust deed; that no one had demanded of Simpson the payment of said first trust deed and there was no reason appearing which would have then required Simpson to have paid and satisfied the bank's first trust deed in order that Simpson's interest might be protected; that Simpson had no property interest to protect at the time which would have required payment of the indebtedness due the bank and in paying and satisfying the bank's first trust deed, Simpson was a volunteer and Simpson's act and conduct in paying and satisfying the bank's first trust deed was only for the reason of springing a surprise upon plaintiffs and to enable him to acquire the property in question for himself at said Trustee's sale and at a price far below the real value of said property." Simpson does not question the factual matters in the finding last quoted, but asserts that the finding that he was a volunteer and had no interest to protect, is a conclusion of law.

Simpson's contention is that he was not a volunteer; that he had an interest to protect, and that, therefore, he is entitled to have repaid to him the amount he paid the bank ($17,380.85) in addition to the $12,000. His claim is that "he who seeks equity must do equity" (10 Cal.Jur. 508), hence plaintiffs, who are seeking equity, must pay the amount he paid the bank.

It is true that the maxim applies, and a plaintiff may be required to do equity in some cases, though defendant could not have obtained such equity by independent action or as

the acting party. (*Dool* v. *First National Bank*, 207 Cal. 347 [278 P. 233] ; *Holland* v. *Hotchkiss*, 162 Cal. 366 [123 P. 258, L.R.A. 1915C 492] ; Pomeroy's Equity Jur., (5th ed.) § 386a).

██ It is also true, however, that in the application of that . maxim the court does not create substantive rights under the guise of doing equity, that is, it does not confer rights when the one who invokes it has none (*Rosenberg* v. *Lawrence*, 10 Cal.2d 590 [75 P.2d 1082] ; *Lande* v. *Jurisich*, 59 Cal.App.2d 613 [139 P.2d 657]) or as has been stated: ''With respect to the terms which may be imposed upon the party as a condition to his obtaining the relief in accordance with the rule,—that is, the 'equity' which he must do,—it is undoubtedly true, as said by Vice-Chancellor Wigram, that the court obtains no authority from this principle to impose any arbitrary conditions not warranted by the settled doctrines of equity jurisprudence; the court cannot deprive a plaintiff of his full equitable rights, under the pretense of awarding to the defendant something to which *he* has no equitable right, something which equity jurisprudence does not recognize. The principle only requires the plaintiff to do 'equity.' According to its true meaning, therefore, the terms imposed upon the plaintiff, as the condition of his obtaining the relief, must consist of the awarding or securing to the defendant something to which he is justly entitled by the principles and doctrines of equity, although not perhaps by those of the common law,—something over which he has a distinctively equitable right.'' (Pomeroy's Equity Jur. (5th ed.), § 386.)

██ The right which Simpson claims he is entitled to have plaintiffs accord him here, in claiming equity, is that of subrogation. ''The principle upon which the right of subrogation is founded applies in all cases in which one person, not a volunteer, pays a debt for which another is primarily answerable, and which, in equity and good conscience, should have been discharged by the latter.'' (23 Cal.Jur., p. 918.) And the rule has found express application with reference to payment by a junior lien holder of a senior lien on the same property. ''Every person, having an interest in property subject to a lien, has the right to redeem it from the lien, at any time after the claim is due, and before his right of redemption is foreclosed, and, by such redemption, becomes subrogated to all the benefits of the lien, as against all owners of other interest in the property, except in so far as he was bound to make such redemption for their benefit.'' (Civ.

Code, § 2903.) "One who has a lien inferior to another, upon the same property, has a right:

"1. To redeem the property in the same manner as its owner might, from the superior lien; and

"2. To be subrogated to all the benefits of the superior lien, when necessary for the protection of his interests, upon satisfying the claim secured thereby." (Civ. Code, § 2904.)

It is the general rule that where the holder of a junior lien on property pays the debt secured by a senior lien to protect his interest, he thereby becomes subrogated to the rights of the senior lienholder as against the owner of the property, even though he takes no assignment of the senior lien. (*Diehl* v. *Hanrahan,* 68 Cal.App.2d 32 [155 P.2d 853]; *Swain* v. *Stockton Savings etc. Soc.,* 78 Cal. 600 [21 P. 365, 12 Am.St. Rep. 118]; 50 Am.Jur., Subrogation, §§ 23, 103.)

As appears from the rule of subrogation, the one invoking it must not have, in making the payment, been a volunteer—an officious intermeddler, or affirmatively he must have had some interest to protect. (See authorities cited *supra; Guy* v. *Du Uprey,* 16 Cal. 195 [76 Am.Dec. 518]; *McMillan* v. *O'Brien,* 219 Cal. 775 [29 P.2d 183]; *Richards* v. *Griffith,* 92 Cal. 493 [28 P. 484, 27 Am.St.Rep. 156]; *Bowman* v. *Sears,* 63 Cal.App. 235 [218 P. 489]; 23 Cal.Jur. 919; Rest., Restitution, § 162; 50 Am.Jur., Subrogation, § 21; Pomeroy's Equity Jur. (5th ed.), § 1212.)

Simpson does not dispute that at the time he paid the bank's trust deed his security-trust deed interest in the property was extinguished by reason of plaintiffs' tenders of payment. Thus it would appear he had no interest in the property when he paid the bank. He asserts, however, that he must have had an interest in the property, otherwise the court would not have required plaintiffs to pay the $12,000 due on their indebtedness to him. That is not persuasive, for he cannot complain if he obtained more than he should have, if that is the case.

In this same connection, he further argues that he thought he had an interest and that a payment of a superior lien by one under a mistaken belief that he has an interest to protect is not a volunteer. It has been held that where a person discharges a lien not incurred by him on property not his own, but which he mistakenly believes to be his, is subrogated to the rights of the lienholder. (*Walker* v. *Walker,* 138 Tenn. 679 [200 S.W. 825]; *Minchew* v. *Hankins* (Tex.Civ.App.), 278 S.W. 306; *Fowler* v. *Parsons,* 143 Mass. 401 [9 N.E. 799];

*Detroit & Northern Michigan Bldg. & Loan Assn.* v. *Oram,*
200 Mich. 485 [167 N.W. 50] ; *Fuller* v. *Harwell,* 126 Cal.App.
654 [15 P.2d 562].)

In *Fuller* v. *Harwell, supra,* 126 Cal.App. 654, property
owned by Sue Harwell was subject to a mortgage given by
her. Plaintiff had a judgment against her husband, T. J.
Harwell, and levied execution on the property. On demand
of the mortgagee he paid the mortgage. It was held that he
was subrogated to the rights of the mortgagee. In response to
the contention that plaintiff never had an execution lien on
the property as it did not belong to the judgment debtor, and
that, therefore, he was a mere volunteer with no right of
subrogation to the mortgagee, the court held that he was
subrogated, stating that an "apparent interest" of the judg-
ment debtor is sufficient to support an "honest endeavor" to
protect his asserted lien where he paid the mortgagor under
the "compulsion" that he would have had to release his lien
unless he did. Also, in the other cases cited *supra,* a point
is made as to the honest belief and endeavor on the part of the
claimed lienholder to protect his interest. It has been said
in speaking of subrogation where a junior lienholder pays a
senior lien: ". . . the plaintiff is not officious, and he uses
his property or his property is used in discharging the obliga-
tion of another or a lien upon another's property, he is entitled
to reimbursement and is entitled to the remedy of subrogation
to obtain reimbursement. The plaintiff is not officious where
he makes the payment under a mistake, or where he is induced
to make the payment by fraud or by duress (see §§ 43, 54).
He is not officious where he was under a duty to make the
payment, as for example where he was a surety (see § 76).
He is not officious where he makes the payment to protect
an interest of his own, as for example where the holder
of a junior encumbrance discharges a prior encumbrance in
order to prevent foreclosure (see § 104). The plaintiff is not
officious where his property is used by another without his
consent in discharging an obligation of the other or a lien
upon the other's property (see § 207)." (Rest., Restitution,
§ 162, com. b.)

Here it appears from the foregoing quoted finding
that Simpson did not obtain an assignment from the bank;
he failed to disclose his discharge of the bank's trust deed until
the sale under his trust deed; the sale of the property was
advertised as for the default on his trust deed; that no demand
was made that he pay the bank and there was no reason which

would have required him to pay it; and that his conduct in respect to paying it and otherwise was to enable him to acquire the property for less than its value, rather than protect any supposed interest of his. Under those circumstances there was no mistake on his part of law or fact that he had to pay the bank to protect his interest or that he had any interest to protect. It is hardly credible that a person who has been tendered the full amount of the debt owed him and without reason refuses the tender, can be said to believe mistakenly that he has any further interest except the aim of obtaining the property for less than its value.

■ Simpson urges, however, that where a plaintiff must do equity to obtain equitable relief, defendant's motive is immaterial; that even though he was a volunteer and guilty of wrongful conduct, plaintiffs will be unjustly enriched if they are not required to reimburse him for his discharge of the bank's trust deed. It is said: "A person who without mistake, coercion or request has unconditionally conferred a benefit upon another is not entitled to restitution, except where the benefit was conferred under circumstances making such action necessary for the protection of the interests of the other or of third persons." (Rest., Restitution, § 112.) Further: "A person who officiously confers a benefit upon another is not entitled to restitution therefor." (Id., § 2.) We believe those principles are applicable to a defendant who seeks to have an equity granted to him. Plaintiff is not "unjustly" enriched when the cause of the benefit conferred was the wrongful conduct of defendant.

We think that Simpson's conduct was fraudulent, either actually or constructively or at least tantamount to fraud, that is, an endeavor to unlawfully obtain plaintiffs' property for less than its value. It was more than merely having a bad motive. It was a fraudulent scheme carried to fruition by Simpson, and only the intervention of the court by this action prevented its full realization. The cases such as *Bateman* v. *Kellogg*, 59 Cal.App. 464 [211 P. 46]; *Olivero* v. *Rosano*, 42 Cal.App.2d 740 [109 P.2d 976]; *Wolfe* v. *Titus*, 124 Cal. 264 [56 P. 1042]; *Savings & Loan Soc.* v. *Burke*, 151 Cal. 616 [91 P. 504]; *Holland* v. *Hotchkiss, supra,* 162 Cal. 366; and *Dool* v. *First National Bank, supra,* 207 Cal. 347, cited by Simpson are not in point.

■ Simpson asserts that the judgment is not clear that plaintiff's title is quieted, subject to the payment of the $12,000, less costs. It reads: "IT IS . . . ADJUDGED . . . that plain-

tiffs are not entitled to damages under and pursuant to the provisions of Sections 2941 and 3294 of the Civil Code of the State of California.

"It Is . . . Adjudged . . . that plaintiffs . . . are the owners in fee [of the property].

"That the defendants, or either of them, have no right, title or interest therein, and no lien or encumbrance of any nature or kind therein, and that plaintiffs' title to their said real property is quieted, and is free and clear of any lien or encumbrance or claim in favor of the defendant Russell Brown Simpson, the quieting of said title to said real property is conditioned upon the payment to the defendant, Russell Brown Simpson, of the sum of $12,000.00 less allowed costs herein, within a period of thirty (30) days from the date of notice of entry of this judgment and decree." We believe it is clear enough and adequately sets forth Simpson's rights.

Finally, Simpson asserts that plaintiffs have lost their right under the judgment to have their title quieted because they failed to pay the $12,000 less costs within 30 days after the notice of entry of judgment as provided in the judgment. It appears that a tender was made within the time, but that a satisfaction of the judgment was demanded by plaintiffs. Simpson refused the tender on the basis that if he gave a satisfaction he would lose his right to appeal. The general rule is that the acceptance of benefits under a judgment will foreclose the right to appeal therefrom. (*Schubert* v. *Reich,* 36 Cal.2d 298 [223 P.2d 242]; 2 Cal.Jur. 229.) However, "The rule has no application where the benefits accepted are such that appellant is admittedly entitled to them or would not be affected or put in jeopardy by the appeal." (*Schubert* v. *Reich, supra,* 300.) All that Simpson is asking is that the judgment be modified so as to require payment to him of the $17,380.85, which he paid to the bank in addition to the $12,000. There is no dispute about the amount paid to the bank. Plaintiffs do not object to the requirement that the $12,000 be paid to Simpson. Thus, the requirement that $12,000 be paid to Simpson is not put in jeopardy by this appeal. Hence Simpson should have accepted that tender and given satisfaction for it. As said in *People* v. *Roath,* 62 Cal.App.2d 241, 246 [144 P.2d 648]: "From what we have heretofore said it is at once apparent that respondents' claim in this regard cannot be upheld because an appellant is not precluded from prosecuting an appeal from a judgment in his favor when such appeal is

for the purpose of establishing a greater claim and where, as here, it affirmatively appears that he is entitled to that which he has accepted, but is contending for something more . . . Furthermore, where as in the case at bar, appellant accepted payment of a part of the judgment which was favorable to it, but the part adverse to appellant can be reversed without affecting the part which was favorable, the appellant is not estopped from prosecuting an appeal from that part of the judgment which was against it.''

The judgment is affirmed.

Shenk, J., Edmonds, J., Traynor, J., and Spence, J., concurred.

SCHAUER, J.—I can understand that the result reached by the majority deservedly, in a moral sense, punishes Simpson; but I think that in a legal sense it unjustly enriches the plaintiffs. I can agree with the majority that Simpson paid the bank loan because he thought that such procedure would aid him in securing the property at less than its reasonable value; but I think that it also indubitably appears that in so doing he labored under a mistake of fact or of law or of both fact and law.

It seems to me there can be no doubt that Simpson did not intend to make a volunteer payment for the benefit of another; he believed that he had an interest in the property and he believed that he was protecting and furthering that interest when he discharged the bank's lien. The bank's lien was valid; it was a bona fide prior charge against the property and payment of it protected that property against, and relieved it of, the bank's claim. Such claim of the bank, existing against the property, was just as much adverse to plaintiffs as it was to defendant. In fact, with the extinction of defendant's lien, the lien of the bank was left as more substantially adverse to plaintiffs than to anyone else. Simpson thought he was paying off a charge against his own property; it developed that he paid a charge against plaintiff's property. Since plaintiffs receive the full benefit of the payment it seems to me that as a condition of quieting their title the court should require them to reimburse the payor. This conclusion appears to me to accord with the cases cited in the majority opinion.

Gibson, C. J., concurred.