[Civ. No. 19216.   Second Dist., Div. One.   Mar. 6, 1953.]

JACK R. STEIN et al., Respondents, v. RUSSELL BROWN SIMPSON, Appellant.

David Welts for Appellant.

No appearance for Respondents.

Arthur E. T. Chapman and Max Tendler, as Amici Curiae on behalf of Lou Miller, a judgment creditor of Respondents.

DORAN, J.—This is a third appeal by the defendant in the present action which was instituted by plaintiffs Stein to quiet title to certain real estate, and to vacate a trust deed sale by appellant Simpson, the beneficiary under a second trust deed executed by the Steins.  The trial court found that, as alleged by plaintiffs, the trust deed in question was executed to secure Simpson's usurious loan in the amount of $20,000; that the unpaid balance thereon did not exceed $12,000, which amount was tendered to Simpson on several occasions and refused.  The judgment in plaintiffs' favor

was affirmed in *Stein* v. *Simpson,* 37 Cal.2d 79 [230 P.2d 816].

From "the unchallenged findings of fact," as set forth in the above opinion, it appears that plaintiffs' property had a value of over $50,000, encumbered by a first trust deed of $18,000 in favor of the Hollywood State Bank. "Simpson loaned $20,000 to plaintiffs and demanded and received therefor two notes, each for $22,000, the additional $2,000 on each being a bonus demanded by Simpson. The notes called for interest at 7 per cent. One of the notes was secured by a trust deed on the property and the other by a chattel mortgage on the furniture. At Simpson's request the notes were made payable to a third party, Simons (an employee of Simpson) who was to and did assign them to Simpson. (This was an attempt to avoid a claim of usury.) . . . The $2,000 bonus was usurious interest charged by Simpson."

It was further found that plaintiffs had paid $8,000 on the notes, reducing the principal to $12,000; that Simpson, refusing tenders of the balance, gave notice of default and election to sell, the sale being scheduled for July 23, 1947, and continued from time to time at Simpson's request to September 10, 1947. An hour before the sale, plaintiffs offered to pay the full amount claimed by Simpson, and upon being advised by the Realty Title Company that $16,641.13 was all that was required, made a cash tender to Simpson of $17,000, which was refused.

Simpson stated that "he was interested in acquiring the property, not the money. The sale proceeded, Simpson bidding $36,000.00 and the plaintiffs' agent, Bassett, $50,-000.00. Bassett having only $17,000.00 in cash with him, the title company, at Simpson's request, declared 'all bids off' and started a new sale. The title company then announced that Simpson had paid the plaintiffs' debt to the Hollywood State Bank under the first trust deed in the sum of $17,380.85, and hence the sale would be for the amount represented by both trust deeds. Simpson had paid the bank the amount due on the first trust deed the morning of the sale. Bassett's request for a 24-hour postponement of the sale to obtain funds to cover his $50,000 bid was refused at Simpson's directions. The sale proceeded, Bassett bidding $17,000 and Simpson $18,000. The property was sold to Simpson."

The trial court found that the trust deed sale, "conducted unfairly and in a fraudulent and deceitful manner, and in

such a way as to enable Simpson to become the successful bidder,'' was invalid. The judgment decreed that the plaintiffs Stein ''are the owners in fee of their home'' thereinafter described, and that the defendants ''have no right, title or interest therein, and no lien or encumbrance of any nature or kind therein, and that plaintiffs' title to their said real property is .quieted, and is free and clear of any lien or encumbrance or claim in favor of the defendant Russell Brown Simpson, the quieting of said title to said real property is conditioned upon the payment to the defendant, Russell Brown Simpson, of the sum of $12,000.00 less allowed costs herein, within a period of thirty (30) days from the date of notice of entry of this judgment and decree.'' Plaintiffs' ownership of furniture and fixtures was likewise established.

In affirming this judgment in 37 Cal.2d 79 [230 P.2d 816], the reviewing court states that the undisputed facts ''depict a shocking and unconscionable course of conduct by Simpson''; that in paying off the first trust deed on the day of sale, after previously refusing plaintiffs' tender of payment due under the second trust deed without reason, Simpson was a mere volunteer so that the doctrine of subrogation did not apply, such act being a part of the fraudulent scheme.

The Supreme Court further held that plaintiffs had not lost any rights under the judgment by reason of a failure to pay the $12,000 within the specified time, where a timely tender had been made with a demand of satisfaction of judgment but was refused by Simpson ''on the basis that if he gave a satisfaction he would lose his right to appeal.'' It was pointed out that there was no dispute about the obligation to pay the $12,000, but that ''All that Simpson is asking is that the judgment be modified so as to require payment to him of the $17,380.85, which he paid the bank (on the first trust deed) in addition to the $12,000,'' hence that ''the requirement that $12,000 be paid to Simpson is not put in jeopardy by this appeal.'' It was held that the judgment adequately set forth the rights of the parties, and that it did not unjustly enrich the plaintiffs.

Another appeal in this matter is found in *Stein* v. *Simpson*, 96 Cal.App.2d 642 [216 P.2d 117]. On October 24, 1949, and after judgment had been entered, the trial court made an order directing the clerk to accept from the Steins $11,531.02, and to deliver same to Simpson upon receiving from the latter a satisfaction of judgment. As before mentioned, Simpson refused to execute such satisfaction, and

moved to amend the court's order by striking out the provision in respect to giving a satisfaction. This motion was denied and Simpson appealed from the order. The opinion in 96 Cal.App.2d 642 [216 P.2d 117] denied plaintiffs' motion to dismiss such appeal, and ordered plaintiffs' motion for return of the court deposit set for hearing.

After affirmance of the judgment in 37 Cal.2d 79 [230 P.2d 816], appellant Simpson assigned all rights under the judgment to Attorney David Welts, and conveyed by quitclaim deed to Welts, all interest in the real estate. Thereafter the two motions now under consideration were filed in the trial court: (1) to substitute Welts as defendant in place of Simpson, and (2) for an order enforcing the judgment, on the theory that title to the property now rested in Simpson or the assignee Welts for the reason that the Steins "had defaulted under the terms of the judgment in that they had not paid the $12,000, less costs."

On August 7, 1951, Max Tendler, who had been Simpson's attorney at the trial, filed a petition and was given permission to file an amicus curiae brief disclosing that he now represented one Lou Miller, the holder of a judgment lien on the real property (as against the Steins), and opposed the motion to enforce the judgment in behalf of Lou Miller, who was not a party to the instant action or judgment.

The motions to substitute Attorney David Welts, assignee, as defendant in place of Simpson, and for an order "to enforce the judgment . . . and to recite that the plaintiffs did not satisfy the conditions of the judgment" by making the $12,000 payment, and that David Welts, as Simpson's assignee, should be held the owner of the property, were thereafter heard and denied, and the present appeal followed.

In denying the above motions, the trial judge filed the following memorandum: "It by no means necessarily follows from the fact that the Steins have not complied with the conditions of the judgment in their favor that Simpson or his assignee is entitled to a decree vesting title in him. The doctrine of unclean hands or other equitable considerations could justify the court in refusing to render judgment vesting title in Simpson or his assignee."

It is appellant's contention that the trial court should have granted the motions in question which were not opposed by the respondents Stein, but were only opposed in the amici curiae brief on behalf of Lou Miller, a total stranger to the

action, and whose only interest was as a judgment creditor of the Steins in another action. The appellant denies that there was any "unconscionable conduct on the part of Simpson, although the same cannot be said in respect to the opposer of the motion, Miller." Appellant further claims that the order denying such motions, "is tantamount to a nullification of the judgment of the Supreme Court, (37 Cal.2d 79 [230 P.2d 816])." No brief on behalf of respondents Steins has been filed in this appeal.

Appellant's brief calls attention to affidavits of Simpson, Welts, and one Harry Bassett, filed in support of the motion to enforce the judgment, setting forth an arrangement to the effect that Bassett, who had a lien on the real property, would pay Simpson $18,000, instead of the $12,000 mentioned in the judgment, if and when Simpson obtained title to the realty; that the Steins were insolvent and could not pay the $12,000 nor could they refinance the property. There was also an agreement between Bassett and Lou Miller, dated September 9, 1949, to the effect that both recognized the judgment and that either party might pay Simpson the $12,000, in which event the lien of the other on the real estate would be subordinated to the claim of the paying party.

The main point for consideration on this appeal involves an interpretation of the original judgment which was affirmed in 37 Cal.2d 79 [230 P.2d 816], hereinbefore set out in detail. Appellant's position is that by reason of the Steins' failure to make the $12,000 payment to Simpson within the prescribed time, title to the real property became vested in Simpson. On the other hand, the amici curiae maintain that this judgment "did not intend to divest the Steins of title and possession upon failure to pay the $12,000.00 recited in the judgment." The condition of payment is said to relate "only to the removal of the extinguished trust deed lien of record and the monetary obligation which clouds their title, but does not divest them of title."

Appellant's contention that Simpson or assignee Welts now has title to the premises in question because of Steins' failure to pay the $12,000, is untenable. To sanction such an interpretation would amount to a distinct modification of the judgment by making it say something which it does not say, completely ignoring the direct adjudication that the Steins "are the owners in fee of their home," and that de-

fendants "have no right, title or interest therein, and no lien or encumbrance of any nature or kind therein."

The clarity of the judgment in question was considered by the reviewing court in 37 Cal.2d 79, 86 [230 P.2d 816], Simpson having asserted "that the judgment is not clear that plaintiff's title is quieted, subject to the payment of the $12,000.00 less costs." Answering this contention, and calling attention to the fact that plaintiffs are adjudicated to be "the owners in fee," and the defendant has no right, title, interest, claim or lien in or to the property, but that the "quieting of title to said real estate is conditioned upon" such payment within 30 days, the opinion says: "We believe it (the judgment) is clear enough and adequately sets forth Simpson's rights."

Simpson's "rights," under the explicit language of the judgment, do not include any title, interest or lien. Moreover, it does not order the Steins to pay $12,000 or any other amount, nor does it purport to give judgment to Simpson for anything. The payment of the money is merely made a condition to the record quieting of plaintiffs' title which has been decreed to be "in fee simple." The amount of the Steins' indebtedness is, of course, determined by the judgment, but Simpson has no title, interest or lien in reference to the property. It is impossible to read the judgment in any other manner.

Nowhere, either in the judgment itself or in the opinion affirming such judgment, is there any indication or inference that Simpson, whose conduct is designated as "fraudulent," is to get title to the land under any circumstances, or any interest therein. The judgment is one in favor of the Steins, not Simpson. Bearing in mind that the facts, in the language of the opinion, "depict a shocking and unconscionable course of conduct by Simpson," in an endeavor "to unlawfully obtain plaintiffs' property for less than its value," it is impossible to believe that the court intended to reward Simpson in the manner now claimed.

As noted in the amici curiae brief, had the Supreme Court intended to grant Simpson the affirmative rights now claimed, the judgment would have been modified accordingly. No authority exists for now modifying such judgment nor for employing a forced interpretation which will vest title in Simpson or Welts, the assignee.

Whether Lou Miller, as judgment creditor of the Steins, has a right to attack the judgment collaterally or otherwise,

is beside the point. Whatever the result may be, Miller is not a party to this appeal, and the brief filed by Attorneys Chapman and Tendler by consent of court, is presented only in the capacity of amici curiae. No merit is found in any of appellant's contentions.

The order appealed from is affirmed.

White, P. J., and Drapeau, J., concurred.

A petition for a rehearing was denied March 30, 1953, and appellant's petition for a hearing by the Supreme Court was denied April 30, 1953. Schauer, J., was of the opinion that the petition should be granted.