PATROSSO, J.
The complaint in this action is in three counts, but as the second was dismissed by plaintiffs upon the trial, it may be disregarded. The first count alleges: “That on or about the 26th day of Feb. 1952, the plaintiffs and the defendant entered into an oral contract in the City of Los Angeles, County of Los Angeles, State of California, whereby it was agreed that plaintiffs order and pay for certain plumbing, electrical, concrete and miscellaneous construction work to those certain premises in the City and County of Los Angeles, State of California, more particularly described as the part of the building located at 327-329 South Broadway, it being agreed that such work as was reasonably necessary to remodel said premises and make them fit and suitable as a *Supp. 886 meat market was to be done, said work being subject to approval of both parties prior to its performance, it being further agreed that defendant reimburse plaintiffs for all expenditures made by plaintiffs for said work”; that plaintiffs have fully performed all obligations under the contract; but that defendant has failed and refused “to perform the said contract on his side”; by reason whereof plaintiffs have been damaged in the sum of $2,901.11. The third count is in the form of a common count for money loaned by plaintiffs to defendant in the same amount. Defendant answered, denying the allegations contained in both counts, and upon the conclusion of the trial the court made findings to the effect that the allegations of both counts were true, and entered judgment in favor of plaintiffs, from which defendant appeals.
The defendant contends that the evidence does not support the findings upon either count. We agree, and accordingly are reversing the judgment.
The testimony is not only conflicting, but highly confusing. However, viewed in the light most favorable to plaintiffs, it discloses the following: Plaintiffs are the owners of the Broadway Public Market, various portions of which are leased by them to tenants who operate the different departments or concessions therein. During February, 1952, plaintiffs decided to improve and remodel the entire market, and to lease the various concessions to new tenants. To this end the market was largely closed down from about February 19 to June 19, during which the work of remodeling was in progress. Early in February, and before the market was closed, negotiations were opened between plaintiffs and defendant looking to the leasing of the meat department to the defendant, which culminated in the execution of a 10-year lease, dated March 12, 1952. The lease is silent as to any improvements to be made by either the lessors or lessee other than the customary provisions that the lessors shall not be required to make any improvements or alterations and that the lessee shall not make any alterations or improvements without the consent of lessors. However, the testimony adduced upon behalf of plaintiffs is to the effect that in the negotiations preceding the execution of the lease plaintiffs stated to defendant that they would bear the expense of remodeling the market premises generally, that is, the floor, walls, ceiling, painting and general lighting, “everything except the individual stands themselves,” as well as bringing the electrical wiring “up to the floor” of the portion of the premises to be occupied by defendant, and that defendant would have to bear the cost of *Supp. 887 “any changes in plumbing, electrical work or anything he (defendant) had to do in order to change the stands (fixtures) around,” as defendant “had contracted for new stands.” At the same time it was suggested by plaintiffs that, inasmuch as plaintiffs had awarded a general contract for the work of remodeling which they were doing, the defendant would find it to his advantage to employ the same contractor to do such work as the defendant would require and for which he would have to bear the cost. Pursuant to this suggestion, the defendant engaged the general contractor to remodel a walk-in refrigerator which he has purchased from plaintiffs, converting it from an ammonia operation to electricity. This work was completed and paid for by defendant to the contractor and is not in controversy. In addition, the contractor performed other electrical, plumbing, concrete and carpenter work related to the meat market department. Plaintiffs’ testimony is that all this work was ordered by and performed by the contractor under the direction of defendant, and that plaintiffs had no part therein. When, however, during the course of the work, the contractor submitted bills therefor to the defendant, the latter refused to pay the same, assigning as a reason for his refusal that the charges were excessive and included work which the plaintiffs were obligated to perform and pay for. Thereupon the contractor stopped the work, and resumed and completed the same only at the direction and upon the promise of plaintiffs to pay therefor—this because, as plaintiffs testified, they were desirous that all concessions be ready and in operation on the occasion of the opening of the market on June 17. Thereafter plaintiffs paid the contractor for this work, and it is for the sum, so paid that plaintiffs sought and were granted recovery.
The foregoing recital of the evidence makes clear, we believe, that it falls far short of establishing the contract pleaded in the first count of the complaint, namely, that the parties agreed “that plaintiffs order and pay for certain plumbing, electrical, concrete and miscellaneous construction ... as was reasonably necessary to remodel said premises and make them fit and suitable as a meat market...” and that it was “agreed that defendant reimburse plaintiffs for all expenditures made by plaintiffs for said work. ’ ’ As noted, the proof is to the effect that defendant—not plaintiffs—ordered the contractor to do certain work; that during the course thereof a dispute arose between the defendant and the contractor as to the charges made by the latter, as the result of which he stopped the work, *Supp. 888 and only proceeded therewith upon the order of the plaintiffs, who promised to pay therefor. In short, that plaintiffs paid a debt contracted by the defendant to the contractor for work which defendant ordered the contractor to perform.
It may well be that, under the evidence, plaintiffs might be entitled to maintain an action against defendant under the doctrine of subrogation, in that, in order to protect an interest of their own, they discharged a debt of the defendant which in equity and good conscience should have been paid by him. (See Fresno Inv. Co. v. Brandon (1926), 79 Cal.App. 387, 389 [249 P. 548, 549]; Stein v. Simpson (1951), 37 Cal.2d 79, 84 [230 P.2d 816, 819-820].) However, no such case is presented by the pleadings, and, despite the fact that defendant when making a motion for a nonsuit pointed out the absence of any evidence establishing a contract as alleged, plaintiffs made no request for leave to amend their complaint. The judgment, resting as it does upon a finding of the existence of the express contract pleaded, which finding is unsupported by the evidence, cannot stand. Likewise, without support is the finding with respect to the third count to the effect that plaintiffs loaned to defendant the sum of $2,901.11, for there is not a scintilla of evidence to be found in the record that plaintiffs loaned any money to defendant. Upon a retrial, the parties should be permitted to amend their pleadings, if so advised.
The judgment is reversed.